Julius R. Lippman, J.
This case is of interest because it is one of first impression in the State of New York.
The facts are as follows:
On or about August 2,1961, defendant issued group insurance Policy 29124-01, bearing the effective date of December 8, 1960, to the Trustees of Building Contractors Employers Association, Inc. Insurance Fund. Under a medical catastrophe expense benefits rider which was attached to, and formed a part of Policy 29124-01, at the time of issue the maximum amount payable for covered expenses was $10,000.
On or about September 6, 1961, Planet Construction Corporation, a participating employer who paid the premiums for Policy 29124-01 on behalf of its employees, delivered a certificate of insurance under Policy 29124-01 to Joseph Caggiano, who was then and at all times thereafter to the date of his death remained an employee of Planet Construction Corporation. In the fall of 1964, certain amendments to Policy 29124-01 were negotiated between defendant and Joseph J. Fater, a trustee and the plan administrator, which became effective December 8,1964. Among the amendments was the reduction of the maximum amount payable under the medical catastrophe expense benefits rider for employees over 65 years of age from $10,000 to $5,000.
Neither defendant nor the trustee and plan administrator, Jospeh J. Fater, obtained the consent of Joseph Caggiano to the reduction in coverage under Policy 29124-01, and there is no evidence that Joseph Caggiano received actual notice of such *972 reduction in coverage. However, in November, 1964, after these changes were finalized, the plan administrator mailed a description of the amendments to the participating employers, including Planet Construction Corporation, and provided sufficient copies for distribution to each certificate holder.
On March 17, 1965, Joseph Caggiano suffered an injury to his spinal column which led to his confinement in various hospitals until his death on October 17, 1965. After the insured’s death, defendant received due notice and proof of claim from plaintiff as the executrix of Joseph Caggiano for benefits under Policy 29124-01 which, in the aggregate, exceeded $10,000. Defendant paid plaintiff $5,000 which is the maximum amount payable under the policy as amended. Plaintiff sues for the additional $5,000.
The issue is whether the amendment to Policy 29124-01 was effective to reduce the maximum medical catastrophe expense benefits payable under Policy 29124-01 from $10,000 to $5,000.
The question of law presented is whether a modification of the terms of the policy made between the trustee and the defendant, without the knowledge or consent of plaintiff’s testator, binds the latter. The defendant maintains that the trustee is an agent of the employees having, in effect, unlimited power to bind them to any modification of the policy. While at first blush this position seems correct, on close analysis it cannot be sustained. The relationship here between plaintiff’s testator and' the trustee was not that of principal and agent, but that of trustee and cestui que trust.
The applicable statute is paragraph (b) of subdivision 2 of section 221 of the Insurance Law, which reads: ‘ ‘ Under a policy issued to the trustees of a fund established by the employer members of a trade association, which trustees shall be deemed the policyholder, for the sole benefit of the employees of such employers, the policy must conform to the following requirements:” (emphasis supplied).
There are distinct differences between a trustee and an agent. For example, a trustee has title to the trust property, while an agent does not have title to the property of his principal; an agent is subject to his principal’s control, but a trustee is not; an agency can be created only with the principal’s consent, but a trust can be created without the knowledge or consent of the beneficiary (see Eestatement, Trusts 2d, § 8).
In this case the “ trust instrument ”, so to speak, is the contract of insurance. Whether power to revoke a trust instrument includes power to modify it, and whether power to modify includes power to revoke are questions “ to be determined in *973 view of the language used and all the circumstances ’ (Restatement, Trusts 2d, § 331.) The powers of the trustee with respect to this contract, insofar as here .applicable, are regulated by the following provisions of the contract:
‘ ‘ Termination of Insurance. The insurance on all employees shall automatically terminate upon cancellation of the policy by the Trustees and the insurance on all or any class or classes of the employees of any Employer shall automatically terminate effective as of the date specified in a written notice from the Trustees to the Company to cancel such insurance.
“Administration. For the purposes of this policy, the Company shall deal exclusively with the Trustees, which shall be deemed the representative of each Employer participating hereunder, and any action taken by the Trustees shall be binding upon the Employers. ’ ’
It will be observed that the first of these paragraphs gives to the trustee the power to cancel and thereby terminate the policy.
The defendant asserts that the power to cancel includes the power to modify. The cardinal principle of construction of an insurance policy is, of course, that if there is any ambiguity it will be construed most strictly against the company (Matter of Vanguard Ins. Co. [Polchlopek], 18 N Y 2d 376; Silverstein v. Continental Cas. Co., 23 A D 2d 801, affd. 17 N Y 2d 845). To cancel means to annul or terminate. ‘ ‘ To cancel an instrument means to blot it out, to set at naught the provisions of the instrument cancelled and to declare them void; to do away with an existing agreement” (551 Fifth Ave. v. Wellingbrook, 199 Misc. 500, 503). On the other hand, “ ‘ Modify ’ ordinarily is not used in the sense of completely setting aside the thing to be modified ’ ’ and the power to modify ‘ ‘ does not confer the power to destroy” (58 C. J. S., p. 840). The meaning to be ascribed to the clause permitting the trustee to cancel is that which it would mean to the average man, not to a lawyer or a lexicographer (McGrail v. Equitable Life Assur. Soc., 292 N. Y. 419). To the average man, power to cancel and power to modify are not synonymous.
Nor can the power to modify be inferred from the provision, quoted above, entitled “Administration.” That clause provides that action taken by the trustee shall bind, specifically, the employers. It contains no provision that such action shall bind the ultimate beneficiaries, the employees. More importantly, however, a fair reading of that clause indicates that it is intended to apply to precisely what its caption describes, administration, meaning ministerial acts, within the limits of the policy pro *974 visions. Administration and modification are so clearly different one from the other, that the power to administer cannot possibly confer power to modify.
Judgment is rendered for the plaintiff for the relief demanded in the complaint, and the Cleric is directed to enter judgment accordingly.