Joseph F. Gagliardi, J.
prologue
The renewed motions presented in the instant matter cause a host of vexatious legal questions which require extended discussion of the facts and legal principles applicable thereto. It seems best to first summarize the essence of the case to properly understand the claims and contentions.
Plaintiff is the widow of Frederick C. Reger (hereafter referred to as the insured), and is the named beneficiary of a group life insurance policy once outstanding on the life of the insured. At the time of Mr. Reger’s demise, the insurance policy no longer was viable. Plaintiff contends that defendants owed the insured a duty to advise him of his conversion rights upon termination of insurance coverage. The gravamen of the complaint sounds in negligence for the tort of nonfeasance. Defendants deny that they owed any duty to the insured as claimed, and, further, whatever duty was owed was responsibly discharged.
So much for the facts relating to the merits. Defendants are nonresident corporations and the master policy (as well as another contract between the defendants) contains a choice-of-law provision. A previous motion was decided by this court on August 28, 1973. Since that time one party has been dismissed, another added, pleadings amended, and a stipulation of agreed facts executed. The broad legal areas that require consideration are: in personam jurisdiction, conflict of laws and the duty owed to an insured to advise him of conversion rights.
*529 PROCEDURAL BACKGROUND
As noted, counsel have stipulated to a statement of agreed facts.[1] Originally, plaintiff sued the John Hancock Mutual Life Insurance Company (hereafter "John Hancock”), and the National Association of Bedding Manufacturers Group Insurance Trust Fund (hereafter "the Fund”). Thereafter, plaintiff moved for summary judgment; the Fund cross-moved for dismissal, and John Hancock cross-moved for summary judgment. By decision dated August 28, 1973, this court granted John Hancock’s cross motion holding that notwithstanding "which state’s law governs (New York or Illinois), the insurer is not liable to the beneficiary of an insured-employee under a group plan for the employer’s failure to notify the insured-employee of his conversion privilege, where the insured dies after expiration of the statutory grace period (McGinnis v Bankers Life Co., 39 AD2d 393; Schwartz v Mutual Benefit Life Ins. Co., 28 Misc 2d 367, affd 14 AD2d 754; Degnan v Metropolitan Life Insurance Co., 178 Misc 312 [App Term 1st Dept.]; Christofferson v General Motors Corp., 54 NE2d 642 [Ill App] [abstract opinion]; cf. Smith-Hurd Illinois Ann. Stats., Ch 73 § 846[2]; Kolodziej v Metropolitan Life Insurance Co., 88 NE2d 424 [Ill App])”.
The court denied plaintiff’s motion without prejudice to renewal upon the joinder of the National Association of Bedding Manufacturers (hereafter "NABM”), which was claimed to be an alter ego of the Fund. Similarly, the Fund’s cross motion was also denied without prejudice. The court directed discovery proceedings, particularly on the jurisdictional issues raised (see Peterson v Spartan Ind., 33 NY2d 463), and requested certain additional information, most of which has now been supplied by the statement of agreed facts. The court fixed January, 1974, as the outside date for renewal of any motions. However, the parties by agreement have extended the time for resubmission.
Subsequent to this court’s decision, the parties stipulated to add NABM as a party defendant provided that NABM reserved the right to assert jurisdictional defenses.
*530 THE FACTS
During the period March 1, 1958 through June 30, 1969, the decedent was employed in an executive capacity by a New York firm, Charles P. Rogers & Co., Inc. (also known as Spring Air of Greater New York). On June 4, 1968, the decedent purchased 13 shares of common stock in said company, representing 5 to 10% ownership therein. Charles P. Rogers & Co., Inc. was a member of NABM, which is a nonprofit corporation organized under the laws of the State of Illinois, having its only office in Washington, D.C.[2] NABM was incorporated in 1915, is a membership association of bedding manufacturers and permits suppliers to join as associate members. At present NABM has 373 members and 232 associate members. Twenty-one members and 24 associate members are located in New York. NABM is not licensed to do business in this State, has no office or telephone listing here, and employs 14 persons, all located in Washington, D.C. NABM publishes a trade magazine and prior to January, 1975, utilized the services of one person in this State to solicit advertising for its magazine. NABM characterized this person as a part-time employee or advertising representative working on a commission basis, and all advertisements had to be accepted at its office in Washington, D.C.
The Fund was created in 1958 under the laws of the State of Illinois by an agreement called the "Trust Agreement” between NABM and the trustees of the Fund. The purpose of the Fund was to make low cost group policy life insurance available to employees of member companies if such companies desired to offer the coverage. The Fund has its sole office in Washington, D.C., is not licensed to do business in New York, has no office in this State or telephone listing, and no employees here. The Fund’s only contact with New York is through five members of NABM who are "participating employers” in the insurance plan which presently covers 48 employees working in this State.
The insurance provided by the Fund is pursuant to the terms of a group policy issued by John Hancock to the trustees of the Fund, with the Fund being the policyholder. The insurance is provided on a noncontributory basis — the *531 employer is required to pay all premiums for covered employees. At bar, Charles P. Rogers & Co., Inc. paid all premiums for decedent on a month to month basis as part of a "compensation package” and not as "a negotiated fringe benefit obtained by means of a labor contract”. Neither the Fund nor NABM ever paid a premium for the decedent.
The procedure for obtaining life insurance coverage and continuation thereof is as follows: an employee of a participating employer member who desires life insurance coverage through the Fund submits an application for life insurance to the employer, who forwards it on a form supplied by either of the defendants, to the Fund in Washington, D.C. The Fund returns a certificate of insurance to the participating employer who delivers it to the employee. The certificate states that it is subject to the terms and conditions of the group policy, but is silent on governing law. The certificate also sets forth in great detail the insured’s options regarding conversion to an individual life policy without evidence of insurability on termination of insurance coverage under the group plan. The insurer bills the employer on a monthly basis and the employer remits the premiums to the Fund. The Fund forwards all premiums received to the insurer. The Fund administers the group plan, its expenses defrayed by payment from its members and it maintains all records in connection with the group plan. These records consist of the names (but not the addresses) of the insured employees. This procedure for obtaining and continuing insurance coverage was used at bar.
The trust agreement provides (§ 8.01): "This Agreement and Declaration of Trust shall be construed in accordance with the laws of the State of Illinois”. Participating employers, who are defined as "any employer who becomes a party to this agreement” (§ 1.13) agree to be bound by the terms of the trust (§2.01). The trust agreement also provides that the word "employer” means "the Association [i.e. NABM] and all regular and associate members in good standing of the Association” (§ 1.05). The group policy provides that "This policy is delivered in Illinois and is governed by the laws of that jurisdiction”. The policy contains a conversion privilege whereby an insured may, within 31 days after termination of employment, obtain an individual life policy without evidence of insurability.
Pursuant to usual procedure plaintiffs decedent was ac *532 cepted for insurance on March 1, 1958, and insured for the sum of $5,000, which sum was subsequently increased to $10,000. Plaintiff was the named beneficiary. While decedent was employed by Charles P. Rogers & Co., Inc., he was responsible for administrative matters regarding the group insurance plan and was the recipient of correspondence concerning said plan. Plaintiff’s decedent was an insured under the group policy until July 3, 1969, when Charles P. Rogers & Co., Inc. went out of business. In early July, 1969, a premium bill was returned to NABM by Charles P. Rogers & Co. Inc. with the notation that it has ceased to do business. On July 15, 1969, NABM notified decedent’s employer that insurance coverage for its employees had terminated as of June 30,1969. In fact, coverage actually ceased on July 31, 1969.[3] Neither defendant notified decedent of his conversion privilege (nor did the insurer or employer), although certain officers of the defunct employer did request such information and other employees took advantage of the conversion privilege. On January 15, 1970, decedent requested information about the conversion privilege and was informed by NABM that his time to exercise same had expired. On July 4, 1970, Mr. Reger died and plaintiff, as beneficiary, commenced an action in negligence against John Hancock and the Fund.
THE ISSUES
As indicated at the outset, John Hancock is no longer in the case, and NABM has been added as a party. Plaintiff served an amended complaint containing two causes of action: the first cause of action is asserted against both defendants "acting together and as one party”; the second cause of action is. against NABM only; both causes of action allege a duty upon defendants to have advised decedent of his conversion privilege and prays for $10,000 in damages for their failure to timely render such advice. The amended joint answer contains a partial defense in respect to damages and three affirmative defenses discussed below. The court is unable to comprehend the difference between the predicate for liability as set forth in the separate causes of action. In reality, it is claimed that *533 defendants are joint tort-feasors because their acts contributed to the damage and it is not possible to determine in what proportion each contributed (Slater v Mersereau, 64 NY 138; Colegrove v New York, & New Haven R. R. Co. & N.Y. & Harlem R. R. Co., 20 NY 492; Prosser, Joint Torts & Several Liability, 25 Calif L Rev 413, 435-39; Harper & James, Law of Torts [1956 ed], §§ 10.1-10.2). Even under our modified comparative negligence principles, defendants’ liability remains joint and several (Kelly v Long Island Light. Co., 31 NY2d 25; cf. L 1975, ch 69) and the court shall treat the complaint as presenting a single cause of action in negligence for the failure of each defendant to notify the insured of the conversion privilege. Plaintiff moves for summary judgment and defendants cross-move for dismissal and for summary judgment.
Other than the issue of damages (n 3, supra) the parties raise three issues: (1) jurisdiction over the person of the defendants; (2) conflict of laws (plaintiff opts for New York, while defendants urge Illinois), and (3) whether a cause of action is stated. The court shall consider these issues seriatim.
IN PERSONAM JURISDICTION
The court previously directed joinder of NABM on plaintiff’s allegations that the defendants are alter egos and directed "that the parties conduct discovery and inspection covering at the minimum the jurisdictional issues raised and the inter relationship question regarding NABM and the Fund”. As noted earlier, the parties have stipulated to certain facts in lieu of formal discovery and to this extent must be deemed to have selected their own course of procedure.
Defendants contend that they are wholly distinct and separate entities. An affidavit by one with personal knowledge is annexed to the cross motion papers in support of this position. Plaintiff continues to urge that both defendants had sufficient connections with the insured to justify imposition of joint responsibility. Apparently, plaintiff no longer asserts that defendants are alter egos for jurisdictional purposes; rather, she is content to obtain jurisdiction in some other fashion and pursue the merits through allegations that defendants are joint tort-feasors (at least on the first cause of action). While the documentary evidence submitted indicates NABM performed many of the duties imposed upon the Fund, such as writing correspondence in answering insurance inquiries, *534 plaintiff has failed in her burden of proof on this aspect of the case, and the court holds that defendants are separate entities for jurisdictional purposes (cf. Walkovszky v Carlton, 18 NY2d 414, 23 NY2d 714; Comment, 32 Brooklyn L Rev 408). No parent subsidiary relationship exists, the elements of a joint enterprise are lacking, and no partnership was formed. Therefore, the individual acts of one defendant may not be imputed to the other in determining presence in this State (Delagi v Volkswagenwerk AG of Wolfsburg, Germany, 29 NY2d 426, 432; Taca Int. Airlines v Rolls-Royce of England, 15 NY2d 97).[4]
Plaintiff first contends that since NABM is a nationally based organization, it cannot object to defending suit in New York as an inconvenient forum. Plaintiff confuses the doctrine of forum non conveniens (CPLR 327) with constitutional principles applicable to jurisdiction. Consistent with the due process clause, a State may not exercise jurisdiction over the person until there is a showing that such person had minimal contacts with that State (Hanson v Denckla, 357 US 235). Unless NABM is "present” in this State by "doing business” here, jurisdiction must be predicated upon one of the activities enumerated in our long-arm statute (CPLR 302), which does not extend to the outer limits constitutionally permissible to acts that might otherwise support jurisdiction (1 Weinstein-Korn-Miller, N Y Civ. Prac., par 302.10a).
Contrary to plaintiff’s general assertions regarding jurisdictional contacts with this State, she has failed to establish sufficient forum-related activity in the traditional sense for the court to exercise in personam jurisdiction (Tauza v Susquehanna Coal Co., 220 NY 259; Krasne’s Inc. v Sterling Arms Corp., 47 AD2d 130; Carbone v Fort Fire Jockey Club, 47 *535 AD2d 337; CPLR 301). There has been no purposeful systematic doing of business here in the constitutional sense (McGee v International Life Ins. Co., 355 US 220; Hanson v Denckla, supra; International Shoe Co. v Washington, 326 US 310; Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443).
However, under our long-arm statute (CPLR 302), plaintiff contends that defendants performed acts within the contemplation of CPLR 302 (subd [a], pars 1, 3) which gives this court personal jurisdiction. In this respect the cited statute in pertinent part provides:
"(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary * * * who in person or through an agent:
"1. transacts any business within the state; or * * *
"3. commits a tortious act without the state causing injury to person or property within the state * * * if he "i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
"ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;”.
Insofar as CPLR 302 (subd [a], par 1) is concerned, it is clear that NABM did not transact any business in this State out of which the cause of action arose. NABM’s only contact with this State was through its part-time employee who solicited customers for its trade publication. Being wholly unrelated to the cause of action, jurisdiction under CPLR 302 (subd [a], par 1) does not exist (McLaughlin, Practice Commentaries, McKinney’s Cons. Laws of N.Y., Book 7B, CPLR 302.2, pp 63-65). Other than the allegation that decedent was an employee of the defendant Fund, the Fund had no employees in this State for any purpose. Furthermore, the Fund is a customer of John Hancock and not its agent; the insurer’s activity in this State is not imputable to the Fund for jurisdictional purposes (cf. Standard Wine & Liq. Co. v Bombay Spirits Co., 20 NY2d 13). Moreover, the fact that defendants answer telephone inquiries and correspond by mail with New York employees does not justify jurisdiction under the transaction of business test *536 (Kramer v Vogl, 17 NY2d 27; see McKee Elec. Co. v Rauland-Borg Corp., 20 NY2d 377; cf. Parke-Bernet Galleries v Franklyn, 26 NY2d 13).
Under CPLR 302 (subd [a], par 3) plaintiff urges that defendants committed a tortious act without the State causing injury here. The tortious act alleged is nonfeasance whereby plaintiff must establish a definite relationship between the parties of such character that some social policy justifies imposition of a duty to act (Prosser, Law of Torts [4th ed], pp 339-348): Assuming for the moment that a tortious act was committed, it has been held that an act of nonfeasance committed outside the State by a nondomiciliary cannot support application of New York jurisdiction (Platt Corp. v Platt, 17 NY2d 234).[5] Thus, plaintiff must establish some connection with this State or other interstate activity in conjunction with the tortious act before jurisdiction may be exercised.
Under CPLR 302 (subd [a], par 3, cl [i]) the Fund did not regularly do or solicit business or engage in any persistent course of conduct in this State. Under clause (ii) of the cited statute both defendants could reasonably expect that their failure to act (assuming a duty) could have consequences in this State. However, pursuant to either clause, plaintiff must establish that defendants derived substantial revenue from services rendered in this State or in interstate commerce and no proof has been offered in point. As to the Fund, this lack of proof is fatal,[6] but as to NABM the point is not relevant[7] since plaintiff has proved that per clause (i) said defendant did engage "in any other persistent course of conduct” in this *537 State through the presence of its trade publication employee. The fact that NABM’s presence here is not related to the cause of action is immaterial from a statutory (McLaughlin, Practice Commentaries, McKinneys Cons. Laws of N.Y., Book 7B, CPLR 302, pp 88-89; cf. Miller v Surf Props., 4 NY2d 475), and constitutional (Perkins v Benguet Mining Co., 342 US 437) viewpoint.
Other than the employer-employee status question, the Fund’s contacts with this State are not the "minimal contacts” required under the due process clause (Hanson v Denkla, 357 US 235, 251, supra); nor has it been shown that the Fund purposefully availed itself of the privilege of doing or transacting business here (Hi Fashion Wigs v Hammond Adv., 32 NY2d 583; Delagi v Volkswagenwerk AG of Wolfsburg, Germany, 29 NY2d 426, supra). Thus, the only jurisdictional issue remaining insofar as the Fund is concerned is whether it was decedent’s employer and, therefore, transacted business here within the meaning of CPLR 302 (subd [a], par 1). Of course, a similar question exists regarding NABM’s presence and, further, whether NABM committed a tortious act under CPLR 302 (subd [a], par 3). On the latter point it has been held that where all other requisites sufficient to confer jurisdiction exist, it is not necessary to determine at a preliminary jurisdictional hearing whether the alleged act was tortious, which is a question of ultimate liability to await trial (Evans v Planned Parenthood of Broome County, 43 AD2d 996; 1 Weinstein-Korn-Miller, N.Y. Civ. Prac., par 302.09). At bar, no jurisdictional hearing is being directed (n 6, supra), and the court concludes that the above rationale does not apply where, as here, all parties seek a determination on whether the plaintiff has a cause of action.
The motion and cross motions for summary judgment present questions of law which, incidentally, go to the heart of the jurisdictional issue for if defendants are not employers and if the act is not tortious, there is no jurisdiction. In any event, for the purpose of discussion it may be assumed that jurisdiction exists over NABM per CPLR 302 (subd [a], par 3, cl [i]) and for the purpose of completeness it shall be assumed that if jurisdiction exists over the Fund, its liability is coextensive with that of NABM’s.[8] Thus, it is necessary to ascertain *538 whether the complaint states a cause of action and this requires a discussion of the conflicts question. Resolution of the cause of action issue will also resolve the jurisdictional questions.
CONFLICT OF LAWS
Plaintiff urges that the law of New York applies and contends that the "center of gravity” test espoused in Auten v Auten (308 NY 155), and rejection of a stipulated choice of law provision as held in Antinora v Nationwide Life Ins. Co. (76 Misc 2d 599) govern this case. Defendants argue that the law of Illinois is contractually applicable and, alternatively, if New York law controls, the complaint still fails to state a cause of action.
Under New York law, discussed infra, it appears that an employer is liable for failure to notify an insured employee of his conversion rights under a group plan (McGinnis v Bankers Life Co., 39 AD2d 393). Statutory provisions insofar as is pertinent provide, in essence, that a group life insurance policy must contain a conversion clause that gives the insured 31 days to obtain an individual policy of insurance after termination of employment; and, that the employer must give the insured notice of his rights within 15 days after termination of employment and, if notice is not given, the insured has 90 days from termination of employment to exercise his option (Insurance Law, § 161, subd 1, par [e]; § 204, subd 3). New York obviously has a very real interest in aiding its domiciliaries to exercise conversion privileges and receive notice of rights thereto so as not to lose the opportunity of continuing insurance as a matter of right (McGinnis v Bankers Life Co., supra).
The Illinois statutes do not have a notification requirement pertaining to conversion rights, but do require, as most States, that a 31-day provision, similar to New York’s, be included in group policies (Smith-Hurd Illinois Stats. Ann., ch 73, § 843, subd [d]; Thieme v Union Labor Life Ins. Co., 12 Ill App 2d 110; Cruthfield v Continental Assur. Co., 336 Ill App 411; 1 Appleman, Insurance Law & Practice, § 125; Ann. 68 ALR2d 8, 114, Group Policy — Termination of Employment). Illinois *539 has never held an employer liable for failing to notify an insured of the conversion privilege (see 1 Appleman, Insurance Law & Practice, §§ 43,125 [1975 Supp, pp 46, 93-100]).
Prior to recent developments in conflict of laws, the United States Supreme Court held that a provision in a group policy which sets forth the law governing the contract is effective against an insured who was unaware of that provision (Boseman v Insurance Co., 301 US 196, 202-203). Thereafter, Auten v Auten (308 NY 155, supra) represents New York’s departure from rigid application of contract and tort conflict of law concepts to a more flexible center of gravity, grouping of contacts and governmental interest analysis doctrine. Thus, the rule has evolved that "the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict” (Miller v Miller, 22 NY2d 12, 15-16; Neumeier v Kuehner, 31 NY2d 121; Tooker v Lopez, 24 NY2d 569; 8 NY Jur., Conflict of Laws, §§ 17, 27.5 [1975 Supp, pp 95-98]; 12 Appleman, Insurance Law & Practice, § 7079 [1975 Supp, pp 116-124]; Restatement, Conflicts 2d, §§ 6, 188; Note, 25 Syracuse L Rev 1005; Note, 32 Brooklyn L Rev 143). In the absence of a choice of law provision this rule applies to insurance cases whether the suit is in contract or tort (Allstate Ins. Co. v Sullam, 76 Misc 2d 87).
Nonetheless, as general rule, the Boseman holding is still followed and has been summarized as follows: "where it is provided by the contract of insurance itself that it shall be construed in accordance with the laws of a particular place * * * such provision will * * * control the construction and effect of the contract” provided that "the insurance contract must have a real relation to the jurisdiction whose lav/ is stipulated as governing” (Ann. 53 ALR3d 1095, 1097-1098, Group Insurance-Actions — Choice of Law). The courts of this State have recognized, as controlling, contractual provisions pertaining to which State law governs, where the law chosen bears a reasonable relationship to the transaction (Wyatt v Fulrath, 16 NY2d 169; Haag v Barnes, 9 NY2d 554; A. S. Rampell, Inc., v Hyster Co., 3 NY2d 369, 381; Dougherty v Equitable Life Ins. Soc., 266 NY 71; 8 NY Jur, Conflict of Laws, § 20; 8 Encyclopedia, New York Law [Contracts], § 2404; 11 Williston, Contracts [3rd ed.], §§ 1292A, 1292B; 15 Williston, Contracts [3rd ed], § 1792; cf. Comment, 58 Col L Rev *540 274, Anno, 112 ALR 124, Stipulation as to Governing Law). This view has been adopted by sections 186 and 187 of the Second Restatement on the Conflict of Laws and is codified in section 1-105 of the Uniform Commercial Code.
In insurance contracts the courts have considered diverse factors in determining which State’s law governs (29 NY Jur, Insurance, §§ 64, 66, 71; 2 Couch, Cyclopedia of Insurance Law [2d ed], §§ 16.1-16.61; 12 Appleman, Insurance Law & Practice, §§ 7071-7095; 1 Richards, Insurance [5th ed], § 38). It has been recognized that insurance involves contracts of adhesion and is usually governed by the law of the State where the insured resides (Zogg v Penn Mut Life Ins. Co., 276 F2d 861, 864; Ehrenzweig, Conflicts In a Nutshell, § 66). However, different factors must be considered in determining which law applies to group life insurance policies (Oakley v National Western Life Ins. Co., 294 F Supp 504), but, as in other cases, the expectation of the parties remains the controlling factor (Allstate Ins. Co. v Sullam, 76 Misc 2d 87, supra).
Group life insurance policies are generally not treated as contracts of adhesion because the group insured is usually large enough to exercise leverage in bargaining for provisions not normally offered at similar rates in individual policies (Simpson v Phoenix Mut. Life Ins. Co., 24 NY2d 262). The Second Restatement on the Conflict of Laws takes the position that uniformity in interpretation, construction and applicability is desirable in all group insurance contracts where insureds reside in different States (§ 192, comment h, pp 605-606). Consequently, while the governmental interest analysis approach has been utilized in insurance contracts (Lester v Aetna Life Ins. Co., 433 F2d 884, cert den 402 US 909; 12 Appleman, Insurance Law & Practice, § 7079 [1975 Supp, pp 116-124]), as in other contracts (Intercontinental Planning v Daystrom, 24 NY2d 372), and in group life insurance cases where no choice of law provision is stipulated (Oakley v National Western Life Insurance Company, 294 F Supp 504, 509, n 4, 510, supra; 2 Couch, Cyclopedia of Insurance Law [2d ed], § 16:19.5 [1974 Cum. Supp, pp 13-15]), the prevailing view is that choice of law provisions in group life policies are given effect (Prudential Ins. Co. of Amer. v O’Grady, 97 Ariz 9; Woelfling v Great-West Life Assur. Co., 30 Ohio App 2d 211; 8 NY Jur, Conflict of Laws, § 21; Restatement, Conflict of Laws 2d, § 192, comment e, p 603; Ann. 53 ALR3d 1095, Group Insurance-Actions-Choice of Law; 2 Couch, Cyclopedia of In *541 surance Law [2d ed], § 16.16; 15a C.J.S., Conflict of Laws, § 21(2); 44 C.J.S., Insurance, §52; 12 Appleman, Insurance Law & Practice, §§ 7074, 7075; Note, 57 Col L Rev 553, 560). Whether the prevailing view, in the context presented, has been adopted in this State is open to question.
In Kahn v Great-West Life Assur. Co. (61 Misc 2d 918) the certificate of insurance given the insured (as well as the group policy) stated that Illinois law applied. However, the insured committed a fraud in securing the insurance, and if New York law applied, the insurer could not assert a defense whereas under Illinois law the insurer had a complete defense. The court concluded that Illinois law applied but noted that the center of gravity approach was not being considered because of the fraud. Subsequently, in Antinora v Nationwide Life Ins. Co. (76 Misc 2d 599), involving a group accident and health policy, the master policy provided that Ohio law apply while the certificate was silent thereon; and the court held that under the governmental analysis theory New York law applied. Antinora is significant since it involved construction of analogous provisions of the Insurance Law regarding termination and conversion privileges. Nonetheless, Antinora is distinguishable for there the insurer, who was also the employer, withheld a premium from the insured’s paycheck after termination of employment, but within the 31-day grace period, and the court found that the insured could reasonably believe that New York law was applicable since his policy was apparently still in effect during the period when a claim arose.
The rule to be applied is rather simple: in group insurance policies a choice of law provision should be given effect unless it contravenes this State’s public policy (cf. Matter of Crichton, 20 NY2d 124, 137, n 10; Intercontinental Hotels Corp. v Golden, 15 NY2d 9; 8 NY Jur, Conflict of Laws, § 24; 2 Couch, Cyclopedia of Insurance Law [2d ed], §§ 16.16, 16.19; 12 Appleman, Insurance Law & Practice, §§ 7074, 7075). Public policy is variable, it changes with the times through enactment of new laws and judicial pronouncements and generally means the law of the State as found in its constitution, statutes and judicial decisions (Straus & Co. v Canadian Pacific Ry. Co., 254 NY 407, 413-414; 10 NY Jur, Contracts, §§ 132-139; 17 Am Jur 2d, Contracts, §§ 174-180). While the governing principles are easily understood, it is the comprehension of the unquantifiable that is difficult (Federal Ins. Co. v Fries, 78 Misc 2d 805). Is the policy expressed in our statutes on notification of *542 conversion rights so fundamental that it overrides a choice of law provision? Significant in this respect is subdivision 5 of section 221 of the Insurance Law (L 1969, ch 765) which applies to group accident and health policies and provides for reimbursement of certain medical expenses upon any group health policy, contract or certificate delivered without the State covering "persons residing in this state”. Thus, the Legislature is quite capable of drafting legislation to suit the needs of our inhabitants in those situations where the conventional wisdom requires application of New York statutory provisions in group policies covering persons residing here. The fact that similar language was not used in the statutes applicable to this case militates against application of New York law where an otherwise valid choice of law provision exists.
The views expressed in the Second Restatement on the Conflict of Laws (§ 192, comments e, h), and followed by a majority of jurisdictions (Ann 53 ALR3d 1095, Group Insurance-Actions-Choice of Law), are consistent with the evolution of new concepts in conflict of laws and constitute a reasonable accomodation of the varying interests. One may surely question what law of Illinois needs vindication (i.e. false conflict?),[9] and, further, whether defendants’ contacts with Illinois are so substantial as to require this State’s public policy to defer to the stipulated choice of law. Concededly, the paramount interests in this litigation weigh heavily in favor of the beneficiary and support application of New York law.[10] However, as noted in comment f to section 187 of the Second Restatement on the Conflict of Laws: "The parties to a multistate contract may have a reasonable basis for choosing a state with which the contract has no substantial relationship” (p 567). Defendants *543 herein and the insurer were parties to the master policy and intended that the law of Illinois control presumably because defendants, who are incorporated under the laws of that State, were most familiar with the legal principles that would govern their conduct. In all searches for the proper choice of law, intention of the parties remains the guidepost (Intercontinental Planning v Daystrom, 24 NY2d 372, supra). Thus, it is concluded that the choice of law provision has a reasonable basis to support application of Illinois law and serves wholly desirable objectives in an attempt to achieve uniformity and judicial symetry.[11] Otherwise, litigants could obtain different rulings in several States on the same facts emanating from the same group policy.
Even our governmental analysis test gives way to a fundamental fairness rule whereby the laws of the jurisdiction under which the parties have patterned their conduct prevails (Miller v Miller, 22 NY2d 12, 19). At bar, it is clear that the parties to the master policy all believed that Illinois law applied and their expectations should not be accorded any less weight than those of the insured or his beneficiary. Consequently, the court holds that Illinois law applies, and to the extent that Antinora (76 Misc 2d 599 supra), is to the contrary, I decline to follow it.
Yet, even the determination that Illinois law applies does not terminate the conflicts question. Ordinarily, given a contractual choice of law provision and having decided that the laws of the stipulated foreign jurisdiction apply, it is unnecessary to ascertain that jurisdiction’s conflict of laws rules (Oakley v Western Life Ins. Co., 294 F Supp 504, supra; Restatement, Conflict of Laws 2d, § 186, comment b, § 187, subd [3]). Nonetheless, an anomaly seems to exist for if Illinois were the forum State, and if defendants sought to avoid an Illinois statute favorable to the insured, it would appear that Illinois would reject the choice of law provision and apply the law of the jurisdiction most favorable to the insured (Hofeld v Nationwide Life Ins. Co., 7 Ill App 3d 226).
The process of referring back to the foreign jurisdiction’s conflict of laws rules is known as renvoi — the doctrine of remission, whereby the forum State looks to the whole law of the foreign jurisdiction — which is generally not recognized in *544 this country except in land title and divorce cases (Restatement, Conflict of Laws 2d, § 7; Restatement, Conflict of Laws 2d, § 8; 16 Am Jur 2d, Conflict of Laws, § 2). It has been said that the doctrine does not apply in this State (Matter of Chadwick, 109 Misc 696, 708-715), but the rule was applied by our Court of Appeals (Dupuy v Wurtz, 53 NY 556; cf. Rosman v Trans World Airlines, 34 NY2d 385), and has been accepted by other courts in New York (Matter of Schneider, 198 Misc 1017 [and authorities cited], upon rearg. original decision adhered to, see 198 Misc 1030; see 8 NY Jur., Conflict of Laws, § 9). Indeed, renvoi has been incorporated in our statutes (see, e.g., Uniform Commercial Code, § 9-103, subd [3]), and is the subject of favorable legal commentary (see Cheatham, Griswold, Reese and Rosenberg, Conflict of Laws [casebook, 1964 ed], 83, 85-86, n 2).
In the court’s opinion the parties to the group policy obviously intended only Illinois internal law to apply. To look to the whole law of Illinois would serve to introduce uncertainty (Restatement, Conflict of Laws 2d, § 187, comment h, p 569) and, hence renvoi should not be utilized; but, if I understand Illinois law in point (Hofeld v Nationwide Life Ins. Co., supra), Illinois would apply New York law under the present facts (not through renvoi, but by rejection of the stipulated law provision), then we are back to square one and the specter of inconsistent determinations under the same group policy where, for example, a New York insured brings suit in Illinois. Consequently, in determining whether the complaint states a cause of action I shall, as I did on John Hancock’s cross motion, consider the matter under the applicable laws of both States.
CAUSE OF ACTION
"In considering a motion to dismiss a complaint for failure to state a cause of action, the challenged pleading must be liberally construed (CPLR 3026; Walkovszky v Carlton, 18 NY2d 414, 419; Condon v Associated Hosp. Serv., 287 NY 411, 414; Wainwright & Page v Burr & McAuley, 272 NY 130,132). Upon such motion the court accepts 'as true the material allegations of fact contained in the complaint and any reasonable inference that may be drawn therefrom’ (Garvin v Garvin, 306 NY 118, 120; St. Regis Tribe of Mohawk Indians v State of New York, 5 NY2d 24, 36). If any cause of action can be spelled out from the facts alleged, the motion must be *545 denied (Dulberg v Mock, 1 NY2d 54; Foley v D’Agostino, 21 AD2d 60, 64-65). The court, however, does not assume the correctness of any legal conclusion drawn by the pleader (Kip v New York and Harlem R. R. Co., 67 NY 227, 230; Sleepy Hollow Val. Committee v McMorran, 27 AD2d 665; City of Albany v McMorran, 16 AD2d 1021, 1022).” (Torrey Delivery v Chautauqua Truck Soles & Serv., 47 AD2d 279, 282.) The inquiry is limited to whether the pleader has a cause of action rather than whether one is stated (Kelly v Bank of Buffalo, 32 AD2d 875).
The group policy has become quite popular since its introduction in 1911 (Gregg, Group Life Insurance [3d ed], pp 11-22). At bar, we are concerned with a typical multiple-employer trust plan providing coverage to employees of employers engaged in the same industry (p 27; see Gregg, Life & Health Insurance Handbook [2d ed], pp 358-368). The better view of the employer’s status vis-á-vis its employees in insurance matters holds that the employer is the agent of the employees since the real insured is the group and the employees, as covered persons, are entitled to certain privileges and benefits through the participation of the employer (1 Appleman, Insurance Law & Practice, § 43; see 7 Williston, Contracts [3d ed], § 901, pp 74-75). "The conversion privilege is a significant benefit feature in group life insurance. It is intended primarily to protect the uninsurable employee who must leave his employment against the loss of his life insurance. It is especially important in the case of the employee who has no other life insurance” (Gregg, Group Life Insurance [3d ed], p 71).[12]
The statutes of this State require the employer and insurer of any group life policy that may be "delivered] in this state” to notify the insured of conversion privileges 15 days after termination of insurance (Insurance Law, §§ 161, subd 1, par [e]; 204, subd 3). If notification is not given within the 15-day *546 period, subdivision 3 of section 204 of the Insurance Law gives the insured an additional 90 days after termination to elect conversion. The cited statute as it existed during the material events herein (minor language change occurred in 1971, L 1971, ch 890 § 2) provided: "In the event a group life insurance policy hereafter issued to a group * * * for delivery in this state permits a certificate-holder to convert to another type of life insurance within a specified time after the happening of an event, such certificate-holder shall be notified of such privilege and its duration within fifteen days after the happening of the event, provided that if such notice be given more than fifteen days, but less than ninety days after the happening of such event, the time allowed for the exercise of such privilege of conversion shall be extended for fifteen days after the giving of such notice. If such notice be not given within ninety days after the happening of the event, the time allowed for the exercise of such conversion privilege shall expire at the end of such ninety days. Written notice by the employer given to the certificate-holder or mailed to the certificate-holder at his last known address, or written notice by the insurer mailed to the certificate-holder at the last addresses furnished to the insurer by the employer, shall be deemed full compliance with the *■ * * giving of notice.”
The above-quoted provision was added in 1940 (L 1940, ch 208) and represents this State’s interest in insuring that employees are given ample opportunity to be informed and exercise their conversion rights (DeVille v Continental Assur. Co., 10 AD2d 386, affd 8 NY2d 1080; Payne v Equitable Life Assur. Soc. of U.S., 14 AD2d 266, affd 11 NY2d 1006). Prior to McGinnis v Bankers Life Co. (39 AD2d 393), it had been held that the notification duty was statutory only and did not apply to policies issued prior to the effective date of the statute (Ogrodowski v Aetna Life Ins. Co., 36 Misc 2d 318; cf. Miller v Metropolitan Life Ins. Co., 64 Misc 2d 658 [statute applies to renewals of pre-1940 group policies]).
Illinois does not have a statutory notice provision applicable to group policies where, as here, premiums are paid on a monthly basis (Smith-Hurd Illinois Stats. Ann., ch 73, § 846, subd [2]). In Illinois the insured is deemed to know of his conversion privilege and is only entitled to a 31-day grace period for exercise thereof (Smith-Hurd Illinois Stats. Ann., ch 73, § 843, subds [d], [e], [h]; Phelps v Elgin Academy, 125 Ill App 2d 364; see Cruthfield v Continental Assur. Co., 336 Ill *547 App 411, supra). Nonetheless, it has been held that allegations of nonfeasance respecting an employer’s common-law duty to inform employees about conversion privileges present triable issue of fact (Christofferson v General Motors Corp., 322 Ill App 702 [abstract opinion: judgment in favor of employer affirmed]; cf. Riefler v Equitable Life Assur. Soc. of U. S., 21 Ill App 2d 122 [abstract opinion: notice to beneficiary not required]).
McGinnis v Bankers Life Co. (39 AD2d 393, supra) is the leading case in this State on the point in issue. The record in McGinnis indicates that the beneficiary of a group life policy sued the insurer and employer to recover the amount of said policy; the employer was also the administrator of the policy; the plan was contributory and the employee paid 25% of the premiums which were deducted from his paycheck; whenever an employee was on vacation or became disabled premiums were not paid but upon return to work double deductions were taken on the paycheck until back premiums became current; the employee had been disabled once previously, but insurance coverage did not terminate; the employee became disabled and never returned to his job; no further premiums were paid on behalf of the employee, and he was never advised that insurance coverage had terminated. Upon these facts, the Trial Judge directed a verdict for the plaintiff. On appeal, the Appellate Term, Second Department affirmed that part of the judgment against the employer but reversed the judgment against the insurer. On further appeal, the Appellate Division, Second Department, affirmed the disposition at the Appellate Term.
Broadly viewed, the Appellate Division’s holding is succinctly stated in a single sentence: "The duty of the employer to give the notice in question is but part of an employer’s duty of good faith and due care in attending to the policy and the employer should make clear to the employee anything required of him to keep the policy in effect” (39 AD2d 393, 398, supra). The court also noted that the majority of jurisdictions subscribed to that view (citing Walker v Occidental Life Ins. Co., 67 Cal 2d 518). Significantly, Walker discussed the majority and minority views, citing many cases from other jurisdictions (p 522), but failed to include any citation to Illinois case law. Nevertheless, McGinnis represents a landmark decision in the group life insurance field since a liberal reading of its opinion indicates that it is virtually the only decision in the *548 country which could be construed to apply to the facts at bar (cf. Ann. 2 ALR2d 852, Group Insurance — Employee Contributions).
This novel ruling is underscored by analysis of the two cases cited in McGinnis in support of its holding (39 AD2d 393, 398, supra). In Neider v Continental Assur. Co. (213 La 621) and Walker v Occidental Life Ins. Co. (67 Cal. 2d 518), the courts held that the employer is the agent of the insurer and that when the employer fails to inform the insured of the date of termination of employment, insurance coverage continues (see Wells v Driver Co., 121 NJ Super 185). In the cited cases the pivotal question was notification of effective termination of employment for insurance purposes. Indeed, after the Walker decision section 10209 of the California Insurance Code was added, which is similar to our subdivision 3 of section 204, except that the duty of notification is placed upon the policyholder and the insurer. Subsequently, in Hinckley v Bechtel Corp. (41 Cal App 3d 206) the court ruled that Walker was inapplicable to a suit by a beneficiary against the employer policyholder where it was alleged that the employer breached its contractual duties and was negligent in failing to inform the employee of his conversion rights on job termination. The court held that where there was no dispute regarding the date of termination of employment and the certificate of insurance had been. delivered to the employee which described the conversion rights, there was no common-law duty imposed upon the employer to notify the employee of said rights (also, see, Frank v Sentry Life Ins. Co., 526 P2d 1149 [Okla.]).
Defendants initially urge that McGinnis is not a pure conversion notification case since part of the question raised there concerned the employer’s duty to notify the insured that employment was terminated for insurance purposes; an issue not present here. Defendants’ argument is plausible, but upon analysis, fails. The contention that defendants should not be subject to the conversion notification requirement in the absence of a duty to notify that employment was terminated, a duty inuring solely to the employer, begs the question because the duties are not interwoven. At bar, the insured was informed about job termination and defendants were so informed shortly thereafter. Upon receipt of such knowledge, McGinnis enters, and it then became incumbent upon defendants, if their status is deemed akin to employers, to notify the *549 insured of insurance coverage termination and his available options.
Defendants attempt to distinguish McGinnis on other grounds. They argue that in McGinnis the court dealt with a contributory group plan whereas the subject group policy is noncontributory and, therefore, without the ambit of the novel appellate ruling. This distinction tends to have surface merit as the general rule pre-McGinnis was that an employer owes no duty to inform the insured of conversion privileges where the plan is noncontributory (31 NY Jur, Insurance, § 1665; 44 Am Jur 2d, Insurance, § 1878; Ann. 2 ALR2d 852, Group Insurance-Employee Contributions). The rationale was predicated upon an assumption that the securing of such insurance by the employer was a mere “gratuity” (31 NY Jur, Insurance, § 1655, p 589). It is true that substantial legal distinctions exist between contributory and noncontributory group plans (Ann. 68 ALR2d 215, Group Policy — Nonpayment of Premium), but McGinnis seems to draw no distinction on the duty of notification of conversion rights. Furthermore, while the parties have stipulated that the insurance coverage was part of a “compensation package” and not a negotiated fringe benefit, such benefits are commonly a substitute for direct cash wages and cannot, in this enlightened age of employment relationships, be classified as a mere gratuity (cf. Simpson v Phoenix Mut. Life Ins. Co., 24 NY2d 262, 268; Lucas v Seagrave Corp., 277 F Supp 338; Civil Service Law, § 201, subd 4).
Defendants also urge that section 204 of the Insurance Law applies only to group policies delivered in this State and, therefore, the statute is inapplicable. Defendants correctly point out that in group policy situations the insured only receives a certificate of insurance which is merely evidence of the insurance and does not constitute the insurance policy or contract (Cutler v Hartford Life Ins. Co., 22 NY2d 245, 249; Schapira v Metropolitan Life Ins. Co. 33 AD2d 961; Mulligan v Travelers Ins. Co., 113 NYS2d 77, 80 [Hofstadter, J. dissenting opn.], revd on dissenting opn. 280 App Div 764, affd 306 NY 805). The within certificate fully complied with section 161 (subd 1, par [e]) of the Insurance Law in setting forth the insured’s rights on conversion. Thus, defendants’ argument has merit but only insofar as the statute is concerned for the court in McGinnis clearly held that the liability of the employer is not “founded merely upon the impact of the statute”, but also upon the common-law duty of good faith and due care *550 owed by the employer (39 AD2d 393, 397). Consequently, it seems clear that in New York an employer could be held liable under the facts extant without utilizing the statute as a predicate for fastening responsibility.
Plaintiff urges that certain language in the trust agreement makes either defendant decedent’s employer. Plaintiff refers to the definitions of "employer” and "participating employer”, quoted earlier, and states that read literally, such phrases bind defendants and render them employers of the decedent. The argument is tenuous since, if adopted, every member of NABM who procures insurance for its own employees would become the employer of every other member’s employees. Obviously, such an absurdity cannot be seriously entertained, and it is clear that under no legal principle or canon of construction can defendants be considered decedent’s employer. Undoubtedly, NABM is an employer and participating employer, but only insofar as its own employees are concerned.
Finally, the parties raise arguments which focus upon the essence of McGinnis: does the rationale therein extend and encompass entities such as these defendants? Insofar as the Fund is concerned, it is difficult to perceive how it can be deemed a de facto or ostensible employer (Dashinsky v Santjer, 32 AD2d 382); rather, in contemplation of law, the Fund is the trustee and the insured the cestui que trust (Cassedy v Connecticut Gen. Life Ins., 56 Misc 2d 970, revd other grounds 60 Misc 2d 720). Indeed, it has been held that the trustee policyholder is under no legal obligation to notify insureds about a modification of the group policy which reduces coverage (Cassedy v Connecticut Gen. Life Ins., 60 Misc 2d 720, supra). Regarding conversion notification the policyholder does have a duty to inform but only if it is the actual employer. To the extent that the court in Antinora v Nationwide Life Ins. Co. (76 Misc 2d 599, supra) imposed a duty to inform upon the policyholder, qua policyholder, I again decline to follow it and merely note that in McGinnis the employer was also the policyholder, but the court imposed the common-law burden upon the employer, qua employer. After expiration of the statutory time period, McGinnis clearly places such burden solely upon the employer who is in supposed daily contact with the employee, and who can easily inform him of conversion rights, upon job or insurance termination, by providing a slip advising him of said rights in the *551 employee’s (last) pay envelope (39 AD2d 393, 398, supra [citing Gregg, Group Life Insurance, 3d ed, p 71]).[13]
In McGinnis a procedural point was raised because of plaintiff’s failure to cross-move for leave to appeal from the Appellate Term’s order which had reversed the judgment against the insurer; but, the court specifically held that "In our opinion, Bankers Life [the insurer], is not liable for the claimed death benefit” (39 AD2d 393, 396, supra). Consequently, the court is of the view that the McGinnis rationale would not be extended to the policyholder (cf. Fidelity & Cas. Co. of N.Y. v Metropolitan Life Ins. Co., 42 Misc 2d 616, 631) and, similarly, would not encompass a nonprofit organization such as NABM (cf. Dashinsky v Santjer, 32 AD2d 382, 387-388, supra) which, upon these facts, may be considered as a gratuitous de facto administrator (cf. Miles v R & M Appliance Sales, 26 NY2d 451; Wells v Driver Co., 121 NJ Super 185, supra). The fact that NABM knew decedent’s employer was defunct imposes no greater obligation upon it than if the business was thriving and insurance terminated for other reasons. Indeed, NABM’s notification to the employer of insurance termination was not as futile as plaintiff claims for other employees did exercise their conversion privilege.
It does not appear relevant under New York or Illinois law that plaintiff’s decedent dealt with insurance matters and was a shareholder in the corporate employer (Antinora v Nationwide Life Ins. Co., supra; Phelps v Elgin Academy, 125 Ill App 2d 364, supra). Whichever law applies, it is clear that no statute imposes liability and that neither Illinois (cf. Christofferson v General Motors Corp., 322 Ill App 702, supra) nor New York would extend the employer’s common-law duty of due care in insurance matters, pertaining to notification of conversion privileges, to these defendants.
EPILOGUE
For the foregoing reasons the court concludes that plaintiff does not have a cause of action against these defendants and that the complaint fails to state a cause of action. It is also determined that defendants are not decedent’s employer and since no duty is imposed upon them under these facts, in *552 personam jurisdiction is nonexistent as defendants did not transact business in this State nor commit a tortious act. Additionally, the court holds that the stipulated choice of law provision is valid, binding and applicable although New York law was discussed for purposes of completeness. Accordingly, that part of the cross motion for summary judgment is granted upon the ground that the complaint fails to state a cause of action; and that part of the cross motion for an order dismissing the complaint for lack of jurisdiction is also granted. Plaintiff has not requested leave to replead (CPLR 3211, subd [e]) and has not attempted to present other causes of action (cf. Fobare v Mohawk Nat. Bank, 77 Misc 2d 210). Plaintiff’s motion for summary judgment is denied.

. The stipulation is not in compliance with CPLR 3222 and is not a submission on agreed facts. Accordingly, the court has extracted from the pleadings, affidavits and briefs on the original and renewed motions, facts and inferences relevant to its decision. The parties obviously desired such a course of action as is evidenced by the presence of amended pleadings and references to exhibits not a part of the agreed statement.

. While not appearing in the statement of agreed facts, it is uncontroverted that NABM had offices in Chicago, Illinois from 1915 through 1950, and that the office of its trade publication remained in Chicago until 1971.

. The parties dispute the amount of the individual policy that decedent could have obtained under the circumstances regarding the reason for nonpayment of premiums and the applicable language of the group policy and trust agreement. The issue raised bears upon damages: whether decedent could have converted to an individual life policy for either $2,000 or $10,000. The court does not reach this issue.

. While there may be a unity of interest within the meaning of CPLR 203 (subd [b]) among the defendants, and a continuity of interest in the outcome of the case, it is clear that no partnership was formed so as to permit jurisdiction over jointly owned assets, if any (cf. Balogh v Rayner-Smith, 30 AD2d 788, revg 51 Misc 2d 1089). Additionally, no joint enterprise was created if only because an essential element for same is missing— the profit motive (see 32 NY Jur, Joint Adventures, §§ 1, 2, 6, 7,10, 23; 41 NY Jur, Negligence, § 78; 1 NYPJI 2d 2:235, 2:265; 2 Williston, Contracts [3rd ed], §§ 316, 318, 318A; Pederson v Manitowoc Co., 25 NY2d 412). Furthermore, while defendants have served a joint answer with common defenses and jointly cross-moved for similar relief, separate defenses personal to each defendant have been urged in their brief which indicates a divergence of interest (see Plumitallo v 1407 Broadway Realty Corp., 279 App Div 1019; Maguire v Yellow Taxicab Corp., 253 App Div 249, affd 278 NY 576). Finally, it cannot be said that the mutual interest of the defendants in the subject matter is such that they stand or fall together upon a judgment (Prudential Ins. Co. v Stone, 270 NY 154,159; Croker v Williams, 208 NY 480, 484).

. The court is cognizant that Platt was decided prior to enactment of CPLR 302 (subd [a], par 3); but the Court of Appeals discussed the pending legislation and stated that its result would be no different (17 NY2d 234, 238; also, see, McLaughlin, Practice Commentaries, McKinney’s Cons. Laws of N.Y., Book 7B, CPLR 302, pp 86, 93; Homburger & Laufer, Expanding Jurisdiction over Foreign Torts: The 1966 Amendment of New York’s Long-Arm Statute, 16 Buffalo L Rev 67; 80-81; Ferrante Equip. Co. v Lasker-Goldman, 26 NY2d 280, 285-286).

. Ordinarily, the court would direct a hearing on the revenue issue (Allen v Auto Specialties Mfg. Co., 45 AD2d 331; Tracy v Paragon Contact Lens Labs, 44 AD2d 455; cf. Naples v City of New York, 34 AD2d 577), but the court believes that plaintiff has been afforded ample opportunity to conduct discovery and further proceedings herein would not be in the interest of justice. Furthermore, since defendants also seek dismissal and summary judgment on the ground that the complaint fails to state a cause of action, my discussion thereof post renders this procedural point moot.

. Clearly, even a nonprofit organization may be subject to jurisdiction under CPLR 302 (subd [a], par 3, cl i) or (cl ii) upon proof establishing revenue, not profits or income (cf. Delagi v Volkswagenwerk AG of Wolfsburg, Germany, 29 NY 2d 426, 432-433, supra).

. Of course, joint tort-feasors are not necessary parties (Siskind r Levy, 13 AD2d 538; Weidman v Sibley, 16 App Div 616) despite Dole v Dow Chem. Co. (30 NY2d 143) *538 (Liebman v County of Westchester, 71 Misc 2d 997,1007, n 11, revd on other grounds 41 AD2d 756). Furthermore, nonjoinder of a party over whom jurisdiction cannot be obtained does not mandate dismissal (CPLR 1001).

. Are the laws of the two jurisdictions manifestly different? As will be seen post, in New York plaintiff might prevail as a matter of law if defendants are decedent’s employer, whereas in Illinois a triable issue of fact would be presented. If defendants are not decedent’s employer, plaintiff must establish that the law of both jurisdictions is such as would justify judgment in her favor and neither jurisdiction has passed upon the liability of entities other than employers and insurers in the context presented.

. The decedent employee was a resident of this State, as is the plaintiff beneficiary, premiums were paid by his New York employer and the certificate of insurance' was delivered here. The contacts in Illinois were the creation of the trust fund, delivery of the master policy, that defendants are Illinois corporations and Illinois is the situs of the alleged tort. Weighing the contacts with New York’s policy mandating notification to protect insureds and their beneficiaries vis-á-vis Illinois’ nonpolicy, establishes that New York has the paramount interest in this litigation.

. This, of course, presupposes that other States would adopt the majority view and accord effect to the choice of law provision in a group policy.

. On the issue of damages, the general rule pertaining to measure of damages in failing to provide insurance is that evidence of other insurance obtained in lieu of the insurance sought or wrongfully withheld is admissible in mitigation of damages (16 Appleman, Insurance Law & Practice, § 8840 [1975 Supp, pp 129-130]). At bar, the statement of agreed facts reveals that plaintiff received approximately $15,000 in life insurance proceeds from two policies extant at her husband’s death. No further information regarding this fact has been forthcoming and defendants have not pleaded it in mitigation (CPLR 3018, subd [b]). Additionally, the parties stipulated that decedent’s subsequent employer did not have a group plan and, in the absence of evidence in point, the court shall assume that the other insurance was not obtained as a substitute for the unconverted policy in issue.

. Of course, the fact that the Fund did not have the addresses of insured employees cannot insulate it from liability if a duty to inform exists (cf. McGinnis, 39 AD2d 393, 395, supra.) The Fund does not state whether or not such a burden would be "onerous” (39 AD2d 393, 398, supra).