John A. Garbarino, J.
The plaintiff, Mindy H. Kahn, is the designated beneficiary on a certificate of group life insurance issued by the defendant, the Great-West Life Assurance Company, an alien Canadian company licensed to do business in Illinois, to Sidney H. Kahn, a New York dentist who was insured for $25,000 under a group life policy issued to the American Dental Association in Chicago, Illinois, by the defendant insurer. The plaintiff beneficiary moves for summary judgment pursuant to CPLR 3212 and the defendant insurer has made a cross motion pursuant to CPLR 2215 to dismiss the complaint.
Involved herein is a choice of laws problem and counsel for both parties are agreed that if New York law is applicable, the court’s decision should be in favor of the plaintiff beneficiary, but if the court holds that the law of Illinois is applicable, then its decision should be in favor of the defendant insurer.
For the reasons set forth below, the court holds that the law of Illinois is applicable and its decision is in favor of the defendant insurer.
*919 The undisputed facts in this case as they appear from the pleadings and the affidavits are that Sidney Herbert Kahn was a dentist in practice on Staten Island and was a member of the American Dental Association which maintains its central office in Chicago, Illinois. Some time prior to January 16, 1967, the defendant, in an advertisement in the Dental Association’s publication, invited members of the association to become insured under the group life insurance policy issued by the defendant to the American Dental Association. Dr. Kahn mailed a coupon clipped from the advertisement to the defendant from his home in Staten Island. In response, the defendant insurer mailed Dr. Kahn an application which he filled out and mailed to the defendant, together with a check for the first premium.
In response to the application, on or about January 16, 1967, the defendant mailed to Dr. Kahn at his New York residence a certificate of life insurance. However, and this is the crux of this entire matter, the defendant insurer did not mail a copy of the application of Dr. Kahn to the insured or to the beneficiary while Dr. Kahn was alive. The insured died in Staten Island on May 26, 1968, well within the two-year period of contestability.
The plaintiff beneficiary has demanded the policy amount of $25,000 and the defendant carrier has offered to return the premiums. The plaintiff sues in two causes of action, (1) for $25,000, the amount of the policy, and (2) for reasonable counsel fees in accordance with subdivision 4 of section 59-a of the Insurance Law of the State of New York.
The affidavit of Mindy H. Kahn submitted in support of the motion for summary judgment states candidly, page 4: “ the defendant has refused and still refuses to pay the said sum- of $25,000.00 to the plaintiff on the grounds that the statements of the insured in his application for insurance were false and untrue as to his physical and medical condition on the date of application; and that in truth and fact, the statements made in said application by the insured were false and. untrue when so made.”
The parties are agreed that if New York law is controlling on the failure of the defendant insurer to forward a copy of the application, the defendant insurer may not avail itself of the defense based on the fraudulent misrepresentations of the insured. Under Hlinois law, however, the insurer may defend for such fraudulent misrepresentations even though no copy *920 of the insured’s application had been forwarded to him or his beneficiary during the contestability period.
This brings us to the issuance of the group policy to the American Dental Association in 1934 and the issuance of the certificate to the insured in 1967, both of which documents are exhibits herein.
In evaluating the factual background, no less than the legal issues involved, it must be borne in mind that a distinction must be drawn between a certificate of insurance and the group policy (cf. Insurance Law, § 204, subd. 1; Cutler v. Hartford Life Ins. Co., 22 N Y 2d 245). New York could, by statute, regulate the certificate issued for delivery in New York, but not the group policy issued in Illinois (cf. Federal Trade Comm. v. Travelers Health Assn., 362 U. S. 293).
Prior to June 30, 1934, the American Dental Association (hereinafter called “ADA”) applied to the defendant, Great-West Life Assurance Company (hereinafter called the “ insurer ”) for a group policy to cover eligible members. Out of 30,000 eligible members, 8,000 were then insured under a group policy by a Texas company which was to terminate on June 30, 1934. The original policy, before any amendments, provided that “ The place of this policy contract for all purposes shall be the head office of the Company at Winnipeg ’ ’. However, in a covering letter dated February 13, 1935, it was stated, “ Notwithstanding the statement in the policy that the place of contract is the Head Office of the Company in the City of Winnipeg the construction of the terms of the policy is subject to the provisions of the Illinois Statutes made applicable thereto ”. The policy was substantially amended in 1959 but the above provision on the applicability of Illinois law was retained.
The master policy, as amended, constituted the contract of insurance between the individual insured members of the ADA and the defendant insurer. The certificate issued to the plaintiff’s insured in New York was merely evidence of that insurance (cf. King v. Sperry Gyroscope Co., 57 N. Y. S. 2d 684).
When Dr. Kahn applied for insurance in 1967, the following provisions, among others, were in effect:
“1. eligibility for ixsuraxce. — A Member who has not attained his 60th birthday is eligible for insurance under this policy.
“ 2. effective date of ixsuraxce.— The insurance of an eligible Member who makes written .application on the form *921 furnished by the Company, shall become effective, on the date the Company approves evidence of his insurability furnished by him without expense to the Company.
‘ ‘ 6. individual certificate.— The Company shall issue to each Member insured an Individual Certificate subject to the terms and conditions of this policy setting forth the insurance to which he is entitled, to whom it is payable, and containing any and all provisions regarding the termination or reduction of the Member’s insurance.
‘1 The individual Certificate shall not constitute a part of this policy, but shall contain a statement to the effect that this policy is on file at the office of the Group Policyholder and may be inspected at any reasonable time on any business day.
“17. incontestability.— The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from its date of issue, and no statement made by any Member insured under this policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such Member’s lifetime nor unless it is contained in a written application signed by him. It is provided, however, that if notice of the death of any Member is not given to the Company within 15 months after cessation of payment of premiums in respect of such Member, the Company shall not be liable for payment on account of such death.
“ 21. entire contract.— This policy, the application therefor, a copy of which is attached hereto, and the individual applications of Members and the evidence of insurability supplied to the Company therewith, contain and constitute the entire contract between the parties hereto.”
The certificate issued to Dr. Kahn consisted of three pages of printed matter on both sides of each sheet. At the bottom of the face page of the third sheet appeared the following:
‘ ‘ ENTIRE CONTRACT
“ The Group Policy, the application therefor, the individual applications and the evidence of insurability of the Members supplied to the Company therewith, contain and constitute the entire contract between the parties.
‘‘ All statements made by the Association or by any Member shall, in the absence of fraud, be deemed representations and *922 not warranties and no statement shall avoid any insurance under the Group Policy or he used, in defense to a claim under it, unless it is contained in the application therefor or in an individual application of a Member or the evidence of insurability, supplied to the Company in respect of such Member.
“ The place of the contract for all purposes is the Head Office of the Company. But notwithstanding that the place of the contract is the Head Office of the Company, the construction of the terms of the contract is subject to the Illinois statutes made applicable thereto.”
If the plaintiff is to succeed herein, it can only be because the facts in this case by reason of the issued certificate are ■controlled by section 161 (subd. 1, par. [a]) of the Insurance Law (cf. Cutler v. Hartford Life Ins. Co., 22 N Y 2d 245, 251, supra). That provision reads as follows:
§ 161. Group life insurance policies and certificates; standard provisions.
“ 1. No policy of group life insurance shall be delivered or issued for delivery in this state unless it contains in substance the following provisions or provisions which in the opinion of the superintendent are more favorable to certificate holders, if any, or not less favorable to certificate holders and more favorable to policyholders:
“ (a) A provision that the policy shall be incontestable after two years from its date of issue, except for non-payment of premiums by the policyholder and except for violation by the person insured of the conditions of the policy relating to military or naval service; and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made .after such insurance has been in force prior to the contest for a period of two years during .such person’s lifetime and in no event unless it is in a written instrument signed by him copy of which is or has been furnished to such person or to his beneficiary.”
The section has no application here for the reason, that the “ policy of group life insurance ” was delivered in Illinois, and it was not “ delivered or issued for delivery in this state ”.
The court recognizes the legislative intent throughout the Insurance Law to favor the policyholder and beneficiary over the insurer, but the court cannot legislate. In the absence of statutory interdiction, the group policy, as in any other insur *923 anee contract, could validly provide for the system of State law which would govern the insurance contract (cf. Dougherty v. Equitable Life Assur. Soc., 266 N. Y. 71, 80; Oakley v. National Western Life Ins. Co., 294 F. Supp. 504; 43 Am. Jur. 2d, Insurance, § 30). Uniformity of application would be desirable in a policy now covering 30,000 ADA members throughout the country, including New York State.
The plaintiff’s motion for summary judgment is denied in all respects. The defendant’s cross motion for summary judgment is granted.
In arriving at this conclusion, the court is not registering insensitivity to the emerging 11 center of gravity ” or “ grouping of contacts ’ ’ doctrine. The court is of the opinion that there is no statutory bar in New York as contended by the plaintiff which would rule out the defense of fraud interposed by the defendant herein.
Likewise, the court finds no case decided in the State of New York squarely on all fours with the case at hand. It is. a case of first impression on the conflicts of laws aspect raised here.
The court is most reluctant to extend the “ center of gravity ” doctrine to a case such as this, because this doctrine is motivated by our public policy to protect our domiciliaries from the inequities of foreign laws that might advantage the domiciliaries of those foreign States vis-á-vis ours. In the instant case, there is admitted fraud in the application, and the raison d’etre for the implementation of the “ center of gravity” doctrine is totally lacking. Instead of protecting our citizens’ rights we would be conferring on them rewards for their admitted deceits. In the case at hand, there are not even the elements of the avid insurance salesman or the long period of premium payments before contest as mitigants to the deceit.