David O. Boehm, J.
This is a motion for summary judgment, pursuant to CPLR 3212, upon an action brought by the plaintiffs to recover money due under an accident and health group insurance policy. ■
Ronald P. Antinora (Ronald), one of the plaintiffs herein, commenced employment for the Nationwide Life Insurance Company, the defendant herein, on May 20, 1968. Both defendant corporations are licensed to do business in the State of New York and maintain offices in the County of Monroe and the State *600 of New York and are, among other things, in the accident and health insurance business.
On April 1, 1966 defendant Nationwide Life Insurance Company and defendant Nationwide Mutual Insurance Company issued and delivered a group insurance policy in the State of Ohio to the four Nationwide companies, insuring agents of the four companies who elected to participate, for specified coverages, including hospital and medical expenses of the participating agent and/or members of his family. For the coverages the agent paid a reduced premium. The policy contained a conversion privilege permitting an agent whose employment had terminated to maintain the coverages at an individual premium rate if the agent made written application therefor and made payments of the first premium to the insurer within 31 days from the date of termination of employment. Further, the policy contained a provision stating that “ This policy is delivered in the state” (Ohio) ‘ ‘ specified above and is governed by the laws thereof.”
Ronald and his family became insured under this group health insurance plan through the defendant who was his employer and who was also the insurer. Upon his becoming insured, Ronald received in the State of New York the certificate of insurance, which is a summary of the provisions of the group policy. This certificate made no mention of what State law would govern this policy. Periodically, premiums were deducted from Ronald’s paycheck by the defendant employer to pay for this group accident and health insurance.
On July 13, 1971, Ronald submitted his letter of resignation to his employer which was to be effective July 15,1971. Neither of the plaintiffs made written application for conversion within 31 days of the date of termination of employment which was actually July 31, 1971. Through what the defendants claim to be a clerical error, a premium payment by means of a withholding from sums due to Ronald by his employer was made on August 15,1971 and a reimbursement check for the amount withheld was forwarded to the plaintiffs on November 9, 1971.
On August 10, 1971, Ronald’s wife Theresa, coplaintiff in this action, began to experience medical symptoms and illness. Theresa was admitted to the hospital on August 12,1971. While in the hospital, Theresa required surgery. She incurred medical expenses for the hospitalization, doctors’ care, medication and other medical expenses through the period ending September 7, 1971. Plaintiffs filed a claim for the medical expenses incurred in the amount of $1,608.98 on September 21,1971. This *601 claim was refused on October 12, 1971 by the defendant because plaintiff did not exercise his conversion privilege within 31 days of his employment termination.
There is no dispute as to the fact that the medical expenses were incurred, the amount of such expenses, that the master policy was issued and delivered in Ohio, that the certificate was issued for delivery in the State of blew York, or that the plaintiff did not exercise his conversion privilege within 31 days of termination of employment.
The first issue is whether New York State Insurance Law supersedes provisions of an insurance policy where the Insurance Law requires that an insured must have certain rights under a policy but the policy grants no such rights or lesser rights to the insured.
Section 162 of the New York State Insurance Law entitled ‘ ‘ Group or blanket accident and health insurance policies ; standard provisions ’ ’ includes the following in subdivision 1: “No policy of group or blanket accident or health insurance or accident and health insurance and no certificate thereunder shall * * * be delivered or issued for delivery in this state unless the policy contains in substance each and all of the provisions set forth in the following paragraphs ”.
Subdivision 5 of section 162 sets forth the requirement for a conversion privilege in all policies of accident and health insurance. Further, this subdivision 5 states: " Each certificate holder in the insured group shall be given written notice of such conversion privilege and its duration within fifteen days after the date of termination of group coverage, provided that if such notice be given more than fifteen days but less than ninety days after the date of termination of group coverage, the time allowed for the exercise of such privilege of conversion shall be extended for fifteen days after the giving of such notice. If such notice be not given within ninety days after the date of termination of group coverage, the time allowed for the exercise of such conversion privilege shall expire at the end of such ninety days
There is no question, then, that the law of New York requires each certificate of insurance issued for delivery in the State of New York to contain a conversion privilege as well as a notice provision concerning the conversion privilege. A review of New York case law as well as major treatises in this area lead one to the conclusion that New York law must prevail. This is true even though this particular group contract was entered into and delivered in the State of Ohio, the contracting parties *602 to this master policy were Ohio corporations, and the master policy itself states that the laws of Ohio shall apply.
In the case of Salzman v. Prudential Ins. Co. of Amer. (296 N. Y. 273), the Court of Appeals held, among other things, that statutory conditions precedent to lapsing of insurance coverage may not he waived by a policyholder. The general rule as there set forth is that a statute such as the one in question is grounded upon important positions of public policy formulated by the Legislature and that statutory conditions precedent to lapsing or declaration of forfeiture may not be contracted away or waived by a policyholder. This would appear to mean that the insureds residing in New York may not waive their statutory rights by obtaining a group health insurance contract that did not contain a provision concerning notice of conversion. (See, also, Hopkins v. Connecticut Gen. Life Ins. Co., 225 N. Y. 76.)
Beading section 162 of the Insurance Law and the appropriate cases thereunder, as well as section 143, which concerns the law governing nonconforming contracts, in particular subdivision 2 thereof, we again see that the law of New York will apply. Subdivision 1 of section 143 states: ‘ ‘ Except as otherwise specifically provided in this chapter any contract or policy of insurance or annuity contract delivered or issued for delivery in this state in violation of any of the provisions of this chapter shall be valid and binding upon the insurer making or issuing the same, but in all respects in which its provisions are in violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such requirements or prohibitions.” This section implies that section 162 concerning standard provisions and health and accident will be read into the Antinora policy.
Further, subdivision 2 of section 143 states: “No contract or policy of insurance delivered or issued for delivery in this state shall provide that the rights or obligations of the insured or of any person rightfully claiming thereunder shall, with respect to policies of life, accident or health insurance or annuity contracts upon persons resident in, or to policies of insure anee upon property then in this state, or with respect to the liabilities to be incurred by the insured as a result of any activity then carried on by the insured in this state, be governed by the laws of any state or country other than this state ”.
Anderson, Couch, Insurance 2d is one of the authoritative works in the field. It sets forth the applicable law, as follows *603 (vol. 1, § 13:7, pp. 537-539): “As a general rule, stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws. This is especially true where the contract provisions are not in accord with public policy, and are not as advantageous to the insured, or as desirable, as the prescribed provisions, or when the statute itself expressly provides that any stipulation in a policy contrary to its provisions shall be void.” (See, also, §§ 3:7, 3:8, 3:16, 13:6, 13:8, 13:11.)
1 ‘ An insurance company incorporated in a foreign state may not make such provisions in its contracts as will violate the insurance laws of the state in which it is permitted to do business.” (Id., § 13:12, p. 545; see, also, § 13:19; 29 N. Y. Jur., Insurance, §§ 140, 518, 519; 12 Appleman, Insurance Law and Practice, §§ 7072, 7074.)
Since no notice of such conversion privilege was ever communicated by defendant to plaintiffs, the problem here arises because subdivision 5 of section 162 or any other section does not state what happens when such written notice of a conversion privilege is not given and an illness occurs within 90 days of termination of insurance, which illness would have been covered prior to the termination of insurance, and where the insured has not exercised the conversion privilege. This is exactly the case in point.
There is, at the present time, no case law interpreting this portion of subdivision 5 of section 162. Fortunately, however, there is case law under an analogous section of the Insurance Law (§ 204, subd. 3), which covers group life insurance. Keeping in mind the above-quoted portion of subdivision 5 of section 162 concerning the requirement of written notice of a conversion privilege, subdivision 3 of section 204 contains substantially identical language, as follows: 1 ‘ such certificate-holder shall be notified of such privilege and its duration within fifteen days before or after the happening of the event, provided that if such notice be given more than fifteen days, but less than ninety days after the happening of such event, the time allowed for the exercise of such privilege of conversion shall be extended for fifteen days after the giving of such notice. If such notice be not given within ninety days after the happening of the event, the time allowed for the exercise of such conversion privilege shall expire at the end of such ninety days ”.
*604 It is a general rule that when words have been used in a certain sense in one part of a statute, they are to receive the same meaning when used in other parts of the statute unless a different meaning is in some way indicated. Where the same words are used in different parts of the same act, in connection with the same subject matter, it is contrary to settled rules of construction to give them different meanings in the several places where they occur. (See 56 N. Y. Jur., Statutes, §§ 141, 142.) Further, since both sections 162 and 204 promote the State’s humane policy of concern for the public welfare of its residents, they should be given liberal construction (56 N. Y. Jur., Statutes, §221).
Both subdivision 5 at section 162 and subdivision 3 at section 204 were enacted in the public interest to rectify the situation where certificate holders of both group life insurance and group accident and health insurance were ignorant of the conversion privilege and therefore lost valuable rights for no reason. That is why notice is now required to be given. The conclusion to be reached is that since both sections were enacted for the same reasons and since both sections have substantially identical language, the case law interpreting the words of one section can be used to interpret the words of the other section.
In Payne v. Equitable Life Assur. Soc. of U. S. (14 A D 2d 266, affd. 11 N Y 2d 1006) the First Department held that in a group life insurance situation where death occurs during the 90-day period in which the conversion privilege could be exercised but where no notice of conversion privilege had been given, the insured will be covered by the group insurance which terminated within the past 90 days. The analogy to the case in hand is that if death is the triggering event in the group life insurance situation, then sickness must be treated in the same way for the group accident and health insurance situation. Illness occurring during the above-mentioned 90-day period must similarly be covered.
One year prior to Payne, the Fourth Department reached the same conclusion (De Ville v. Continental Assur. Co., 10 A D 2d 386, affd. 8 N Y 2d 1080). In doing so, it closely examined the legislative history of subdivision 3 of section 204, and observed (p. 390): “ It appears from the bill jacket that when this proposed legislation was before the Governor communications in regard thereto were sent to him by the respective chairmen of the Insurance Committees of the Senate and Assembly; the Department of Insurance and others. The Counsel to the Governor in his memorandum stated, among other things, that *605 the bill 1 requires a 15 day notice to be given to the employee of his conversion privilege in the. event that he leaves his employer. If no such notice is given, then the policy is continued for a period of 90 days. I presume that if he should die within the 90 day period, he would recover the face amount of the policy. ’ These communications, of course, are not conclusive but they are aids in seeking legislative intent.”
The court then went on to conclude (p. 392): “ When the history of the legislation relating to group insurance is studied and the language of statute and policy examined there is to be found a legislative intent that in the absence of notice coverage is to be extended for the period of 90 days.”
With respect to any conflict of law question as to whether New York or Ohio law should be applied, this, too, must be resolved in favor of the plaintiffs.
In Oakley v. National Western Life Ins. Co. (294 F. Supp. 504, 508), in responding to the issue of which law should be applied where a certificate holder and his wife were New York domiciliaries, the policy was issued in Missouri by a Missouri corporation to its parent, a Delaware corporation doing business in Missouri, and the certificate holder paid premiums by mailing them from New York to Missouri, the court held: " New York clearly has an interest in assuring its domiciliaries are notified of the right to convert group insurance policies. The state has evidenced this interest and taken steps to protect it * * * The legislative intent and rationale * # * applies equally to policies issued outside the state covering New York residents. The evil to be remedied was the absence of knowledge in New York residents of their right to convert group life insurance policies * * * Certainly this is a legitimate interest of the state, especially when exercised to protect its citizens who pay premiums in or from New York.”
Actually, it would be immaterial here whether Ronald did or did not pay premiums, although the fact of the matter is that he did. The real consideration here for his coverage under the group policy was his working for defendant employer, a corporation which did business in New York and, on whose behalf Ronald acted in New York. It is interesting to note that in Oaldey {supra), as here, the defendant was also the employer.
There is no question but that New York has a superior connection with the situation and a dominant interest in the resolution of the question. New York, therefore, should have " paramount control over the legal issues ’ ’ (Auten v. Auten, *606 308 N. Y. 155, 161; cf Dym v. Gordon, 16 N Y 2d 120; Matter of Crichton, 20 N Y 2d 124; Miller v. Miller, 22 N Y 2d 12; Colonial Penn Ins. Co. v. Minhoff, 40 A D 2d 819), and its interest in notifying its residents of their right to convert group policies must prevail.
To the extent that the holding in Kahn v. Great-West Life Assur. Co. (61 Misc 2d 918), cited hy the defendant, differs from this position, I respectfully disagree. In addition, there are also fact distinctions which can he drawn between that case and this one. First, in the definitions paragraph of the certificate in this case, the insurance plan provided is defined, among other things, as follows: “ (5) any coverage under governmental programs or any coverage required or provided by any statute” (emphasis supplied). Secondly, in Kahn the certificate furnished to the assured specifically provided that notwithstanding the “ place of contract ”, the construction of its terms was “ subject to the Illinois statutes made applicable thereto.” In the case at bar it is conceded that the only reference to the law of the contract is in the policy, a document which Ronald never received. The certificate makes no reference to this at all. As the plaintiffs persuasively point out, it was therefore more logical for Ronald to assume that the insurance coverage was governed by New York law since the certificate of insurance was received by him and delivered to him in the State of New York, an assumption further reinforced by the fact that the defendant employer insurer continued to withhold the premium after Ronald’s termination of employment and during the period of his claim.
In all the cases cited to this point the liability of the defendant is based upon the defendant’s status as an insurer. There is also authority for the position that the defendant is liable in its status as an employer. In McGinnis v. Bankers Life Co., Des Moines, Iowa (39 A D 2d 393), there was presented a group life insurance situation where the insured passed away after the 90-day conversion period had expired. The Second Department held that because of the breach of the employer’s duty to give notice to its employees, the employer was liable to the deceased employee’s beneficiaries for the face value of the insurance policy. At page 398, the court stated: “ The duty of the employer to give the notice in question is but part of an employer’s duty of good faith and due care in attending to the policy and the employer should make clear to the employee anything required of him to keep the policy in effect * * * The majority of jurisdictions are in accord with our view *607 * * * We note that compliance with the duties herein imposed is not an onerous burden for employers. One commentator in this field states: ‘ The most common method of complying with the law is to include in the employee’s last pay envelope a slip advising him of his conversion privilege and giving him directions for making application for the individual policy. ’ ”
Based on the rationale of McGinnis, it is clear that the defendant is also liable in it^ capacity as an employer. The defendant argues, however, that the plaintiffs were not prejudiced by the failure of the defendant employer to give written notice of the conversion privilege because Ronald received a copy of the conversion privilege provision of the policy at the same time he was sent the insurance certificate. In addition, as an agent of the defendants, engaged in the business of selling group insurance policies, he knew or should have known of his conversion privilege rights.
To this the plaintiffs respond that Ronald’s job should not deprive him of rights which every other resident of the State of New York possessed. This appears to be the more correct view. The statute includes everyone. No classification is excluded, whether by legislative exclusion or operation of law, and this court will not engraft the judicial exclusion of contributory negligence, as it is urged to do, particularly in an area where the Legislature has mandated its intentions so clearly. To do otherwise would open a Pandora’s box of defenses which would soon swarm over everyone covered by group insurance with the defense that there was notice in one form or another. The clear direction and remedial purpose of section 162 would ultimately become desicated thereby.
Plaintiff’s motion for summary judgment in the amount claimed, less any deductible portion, is granted, with interest and costs.