CYNTHIA REINISCH et al., Respondents, v METROPOLITAN
LIFE INSURANCE COMPANY et al., Appellants.

Second Department, November 28, 1983

APPEARANCES OF COUNSEL

*J. Austin Lyons, Jr.* (*Margaret Kelly* and *Mary Curry* of counsel), for appellants.

*Manfredi & Bondi* (*Frank M. Manfredi* of counsel), for respondents.

### OPINION OF THE COURT

BOYERS, J.

The issue for our consideration today would appear to be one of novel impression. It is whether, in this action to recover on a policy issued under the Federal Employees' Group Life Insurance Act (US Code, tit 5, § 8701 *et seq.*), an employer-policyholder's notice of conversion granting its terminated employee an additional 15 days within which

to exercise his right to obtain an individual policy without producing evidence of insurability, also extended coverage pursuant to the provisions of the statute, the regulations attendant thereto (5 CFR 870.101 *et seq.*), or the policy, beyond the 31-day grace period set forth in those regulations and in the policy. Special Term held that it did and that, accordingly, plaintiff's deceased, a Federal employee, was covered when he died approximately 40 days after his employment had terminated. We disagree.

In April, 1976, plaintiff's decedent Michael Reinisch began employment with the Federal Government when he was hired by the Federal Aviation Administration (FAA) as an air traffic controller. As an eligible government employee, the plaintiff's deceased husband was covered under group policy number 17000-G, bearing the effective date August 29, 1954. That policy was issued by defendant Metropolitan Life Insurance Company to the United States Office of Personnel Management[1] (OPM) pursuant to the Federal Employees' Group Life Insurance Act (hereinafter the Act) (US Code, tit 5, § 8701 *et seq.;* see, also, § 8702), and administered pursuant to statute and regulations promulgated by OPM, by the Office of Federal Employees' Group Life Insurance (OFEGLI), an administrative department within defendant Metropolitan Life Insurance Company (see, generally, 5 CFR 870.101 *et seq.*) which has been the administering insurance company on behalf of 206 participating companies since the Federal employees' group life insurance program was first authorized by Congress in 1954.

On August 3, 1981, the union representing those who manned the Nation's air traffic control facilities called a strike and President Reagan announced at a press conference that those controllers who failed to report for work within 48 hours would forfeit their jobs and be terminated (17 Weekly Compilation of Presidential Documents No. 32; see, also, World Almanac and Book of Facts [1982 ed], p

1. The agency originally responsible for Federal employees' group life insurance was the Civil Service Commission (see 1954 Pub L 598, US Code Cong & Admin News, 1954, vol 1, p 857). When Congress, as part of its reform of the Federal personnel management system, established the Office of Personnel Management (OPM), it transferred those functions from the Civil Service Commission to OPM (US Code, tit 5, §§ 1101, 1103, subd [a], par [6]; Pub L 95-454).

38). Pursuant thereto, Mr. Reinisch and all other striking members of his union were terminated as of August 27, 1981. On September 28, 1981, the FAA mailed to Mr. Reinisch a completed OPM standard form 2821 entitled "Agency Certification of Insurance Status". Item five of that document informed the former employee that his insured status terminated on August 27, 1981, and item six delineated September 28, 1981, as the date of "Notice of Conversion Privilege". Form 2821 further provided, in pertinent part:

"Death within 31 days. — Under certain conditions, life insurance is payable if death occurs within 31 days after an employee's group insurance terminates even though the employee has not applied for conversion * * *

"Conversion to an individual policy. — See back of this page * * *

"if you are eligible and want to convert to an individual policy, complete the eligibility statement below. Send the original of this form to the Office of Federal Employees' Group Life Insurance, 4 East 24th Street New York, N.Y. 10010. The envelope containing this form must be postmarked within 31 days of the date your group insurance terminated (see item 5 on the other side of this form) or within 15 days of the date of conversion notice (see item 6), whichever basis gives you the most time."

Tragically, on October 7, 1981, Michael Reinisch died as a result of an automobile accident. Thus, his demise occurred on the 41st day following the termination of his Federal employment, and on the ninth day after the date of the conversion notice found in form 2821. Thereafter Cynthia Reinisch, as the widow of Michael, interposed a claim for death benefits under the policy,[2] which claim was denied by the OFEGLI, Metropolitan Life Insurance Company's administrative arm, on December 7, 1981, on the ground that insurance coverage pursuant to the group policy number 17000-G had ceased 31 days following Mr. Reinisch's termination as a Federal employee, and further,

---

2. Michael Reinisch did not execute a designation of beneficiary. However, paragraph (a) of section 8705 of the Act designates the widow of the employee as beneficiary of insurance proceeds absent formal designation by the insured (US Code, tit 5, § 8705, subd [a]).

as he had not contacted OFEGLI and exercised his privilege to convert, he was not covered by an individual policy of insurance.

Mrs. Reinisch then instituted the instant action. Her complaint alleged three causes of action to recover, *inter alia,* life insurance proceeds of $57,200 under group policy number 17000-G, punitive damages and counsel fees.[3, 4] In response to plaintiff's motion for partial summary judgment on her first cause of action for insurance proceeds, defendants cross-moved for summary judgment dismissing the complaint in its entirety. Special Term awarded judgment in plaintiff's favor on her claim for life insurance proceeds under the policy, and in defendants' favor, by dismissing the claims for punitive damages and counsel fees.

Special Term held that insurance coverage on Mr. Reinisch's life did not end 31 days following termination of his Federal employment, but rather, continued during the 15 days mentioned in the "conversion to an individual policy" portion of form 2821 mailed to Mr. Reinisch by the FAA on September 28, 1981. The court reasoned that the Federal legislation and regulations promulgated to afford the right of conversion to an individual policy was demonstrative of an intent that the coverage of insurance be coterminous with the right to convert, so that, by extending the right to convert, coverage was also extended, Special Term further concluded that it was unnecessary to reach the issue of whether principles of Federal pre-emption were applicable, stating:

"Subdivision 3 of section 204 of the Insurance Law of New York requires a group insurer to notify an insured of his right to convert, and the courts have interpreted that statute as meaning that group coverage continues during the conversion period (see *Payne* v *Equitable Life Assurance Society of the U. S.,* 14 AD2d 266, affd 8 NY2d 1006;

---

3. Basic life insurance benefits (life and accidental death, etc.), are payable in accordance with a policy or policies purchased by OPM from Metropolitan Life (US Code, tit 5, § 8709). Absent an allegation of breach of any obligation undertaken by the United States, actions at law or equity to recover on a policy should be brought against the insurance company (5 CFR 870.101).

4. The issue of accidental death benefits was not raised at Special Term and is not addressed on this appeal.

*Deville* v *Continental Assurance Co.*, 10 AD2d 386, affd 8 NY2d 1080.

"However, the court does not consider it necessary to decide whether subdivision 3 of section 204 of the Insurance Law and the case law interpreting it have been preempted. The court believes that by specifically affording an insured a conversion right pursuant to 5 USC § 8706 (a), Congress intended that the insurer notify the insured of his conversion right and that Congress intended that coverage would continue during the conversion period".

We hold that Special Term erred in so concluding, and, accordingly, reverse.

The Federal Employees' Group Life Insurance Act (US Code, tit 5, § 8701 *et seq.*) authorizes the OPM to purchase for eligible Federal employees (see, e.g., US Code, tit 5, § 8701, subd [a]) "a policy or policies of group life and accidental death and dismemberment insurance to provide the benefits specified by [the Act]" (US Code, tit 5, § 8709, subd [a]), which policy or policies are held by OPM with the intent that "[t]he functions normally performed by the employer in a group-insurance plan would, under [the Federal employees' group life insurance program], be performed in the Government by the Civil Service Commission [now OPM]" (President's Message, May 19, 1954, US Code Cong & Admin News, 1954, vol 2, p 3056). As of March, 1982, there were, according to the manager of OFEGLI, approximately 3.68 million Federal civilian employees covered under the program from "the 50 states of the United States, the District of Columbia, possessions and territories of the United States and almost every country in the world". A qualified employee is automatically insured on the date he becomes eligible under the program, and is provided with regular or standard basic life insurance, a proportionate share of the cost being deducted from his salary (US Code, tit 5, §§ 8702, 8707). Among other things, optional life insurance, such as that held by Mr. Reinisch, may be elected, in which case the employee bears the cost of the premium in full by a deduction from pay (US Code, tit 5, § 8714a; see, generally, 5 CFR part 871). OPM is required to furnish each insured employee with a benefit certificate, setting forth various

facts, including the benefits to which the insured is entitled and a summary of those policy provisions principally affecting the employee (US Code, tit 5, § 8703). (There is no contention on plaintiff's part that Mr. Reinisch did not receive such a certificate when he commenced work.) Further, the Act provides that OPM "may prescribe regulations necessary to carry out the purposes of [the Act]" (US Code, tit 5, § 8716, subd [a]). The Federal agencies employing insured employees are responsible for certain functions including certification of the amount of insurance, recordation of beneficiary designations and furnishing conversion notices to insured employees upon termination of employment.

Termination of insurance purchased under the Act is governed by subdivision (a) of section 8706 which states: "A policy purchased under this chapter shall contain a provision, approved by the Office of Personnel Management to the effect that insurance on an employee stops on his separation from the service or 12 months after discontinuance of his pay, whichever is earlier, subject to a provision for temporary extension of life insurance coverage and for conversion to an individual policy of life insurance under conditions approved by the Office."

Effective October 10, 1980, Congress amended section 8709 of the Act by inserting at the end thereof, the following new subdivision governing pre-emption:

"(d) (1) The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

"(2) For the purpose of this section, 'State' means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and a territory or possession of the United States". (94 US Stat 1834.)

Pursuant to the authority granted by subdivision (a) of section 8716 of the Act, OPM (and its predecessor, the Civil Service Commission), promulgated regulations. 5 CFR

part 870 governs basic life insurance under the Act. Section 870.501 addresses the termination and conversion of coverage,[5] stating, in pertinent part:

"(a) Except as provided in §§ 870.601 [retirees, annuitants] and 870.701 [disabled employees], the regular [life] insurance of an insured employee stops on the date of his separation from the service, subject to a 31-day extension of regular life insurance coverage * * *

"(e) During the 31-day extension of regular life insurance coverage under this section a person may, upon application and without medical examination, convert all or any part of his regular life insurance to an individual policy of life insurance at rates applicable to his attained age and class of risk unless, within 3 calendar days after the date his regular insurance stopped, he returns to a position wherein he is not excluded from coverage" (5 CFR 870.501; 33 Fed Reg 12506 [Sept. 4, 1968], as amd at 38 Fed Reg 12404 [May 11, 1978]).

There is no provision in the Act or in the regulations attendant thereto providing that either the United States Government or the insurer is required to notify an employee who has been terminated with respect to any conversion rights he might have upon the discontinuance of his group coverage. Similarly, the provisions of group policy number 17000-G governing cessation, coverage extension and conversion essentially track the regulatory provisions. Hence, the policy provides (as it has since 1954, when first issued), as follows:

"*Section 3*. CESSATION OF INSURANCE. — the insurance on any Employee insured hereunder shall automatically cease * * * on the earliest of the following dates:

"(1) The date of his separation from the service * * *

"*Section 6*. PRIVILEGE OF OBTAINING AN INDIVIDUAL POLICY OF LIFE INSURANCE. —

"Any Employee whose Life Insurance hereunder shall cease * * * shall be entitled to have issued to him, without evidence of insurability, an individual policy of Life Insur-

---

5. Mr. Reinisch had optional insurance, termination and conversion of which is governed by 5 CFR 871.501 in addition to his basic life insurance governed by 5 CFR 870.501. As the two regulations are identical in relevant part, we refer to 5 CFR 870.501 governing basic life insurance only.

ance only, without Disability or Accidental Means Death Benefits, subject to the following conditions and provisions:

"(A) written application for such individual policy and payment of the first premium thereon shall be made within 31 days after such cessation (or within such longer period as the Office may allow) to the Insurance Company * * *

"If the employee dies during the 31 days next following the date of such cessation of his Life Insurance hereunder * * * the Office [of Federal Employees' Group Life Insurance] shall pay".

In summary, a review of the record, the policy and the applicable provisions of the Act and the regulations related thereto evidences a right to convert upon termination and an automatic 31-day temporary extension of life insurance protection following terminations (see *Hefner v Metropolitan Life Ins. Co.*, 329 F Supp 356, 357-360) but no requirement either that the defendant insurer further notify an employee of his conversion rights upon termination, or that the period during which he may exercise his conversion privilege extend past the 31 days set forth in the policy and 5 CFR 870.501. There is no provision in the regulations for an additional 15-day extension of the conversion privilege or that notice thereof be afforded a terminated employee. Rather, as OFEGLI's manager observed, the Federal Government liberalized the provisions of the policy by forwarding to terminated employees standard form 2821 ("Agency Certification of Status") and OPM has not authorized interpretation of the provisions of that conversion notice to provide an extension of life insurance coverage beyond the 31 days following termination.

In deciding this case, which embraces fundamental operation elements (termination and conversion) of a uniform nationwide program of group life insurance inuring to the benefit of a large number of Federal employees, it is the Act and its attendant regulations which control whether the extension of the time limit for conversion in form 2821 may be construed to also provide an extension of entitlement to benefits under group policy number 17000-G. A fair reading of standard form 2821 leads to the conclusion that it is unambiguous and susceptible to one interpretation only — that the notice providing for an additional 15-

day extension within which an employee may elect to convert does not create a concurrent period of extended insurance coverage. The document forwarded to plaintiff's decedent clearly states that the "[d]ate of [t]ermination" of his insurance was August 27, 1981, the date he was "separated" from government service. It further states that under certain conditions, life insurance benefits are payable if death occurs within 31 days of such termination (cf. 5 CFR 870.501 [a]). Finally, the former employee is told that if eligible to convert and desirous of doing so, he must complete the provided eligibility statement and return the conversion form postmarked within 31 days of the termination of his group life insurance (cf. 5 CFR 870.501 [e]), or within 15 days of the date of the notice, whichever gives him the most time (the latter condition being added without specific authority in the statute or regulations). Accordingly, there being no doubt that Mr. Reinisch was aware of his own and other FAA air traffic controllers' much publicized termination (cf. *Wells v Driver Co.,* 121 NJ Super 185), and there being no statement, express or implied, that coverage was extended during the additional 15-day conversion period, form 2821 can only be read for the proposition that life insurance under the group policy ends, at most, 31 days after employment terminates.

The applicable statutes and regulations also support such a conclusion. Section 8706 (subd [a]) of title 5 of the United States Code, which governs "Termination of insurance", specifically provides that a Federal employee's group life insurance policy "shall" provide that insurance "*stops* on [an employee's] separation from [Government] service * * * subject to a provision for temporary extension of life insurance coverage and for conversion to an individual policy of life insurance under conditions approved by [OPM]" (emphasis supplied). As authorized, OPM by regulation, has enacted a 31-day temporary extension of regular life insurance coverage (5 CFR 870.501 [a]), during which time a separated employee may, upon application, convert to an individual policy (5 CFR 870.501 [e]). Clearly, both regulations are substantive rules of law, having no less pre-emptive effect than a Federal statute (see *Fidelity Fed. Sav. & Loan Assn. v de la Cuesta,* 458 US 141, 153), to be applied to all questions of coverage and

conversion. They must thus be strictly construed and enforced as written where, as here (see *infra*), State law conflicts.[6] Indeed, as Special Term noted, the Act itself requires that provisions of the FEGLI policy relating to coverage and benefits shall supersede and pre-empt inconsistent State law and regulations (US Code, tit 5, § 8709, subd [d], par [1]).[7]

---

**6.** The law of our State provides that absent notification of a conversion privilege within 15 days after the event triggering such privilege, the time allowed for the exercise of the conversion privilege shall be extended to a maximum of 90 days after the termination of coverage (Insurance Law, § 204, subd 3) during which period coverage continues (*Payne v Equitable Life Assur. Soc.*, 14 AD2d 266, affd 11 NY2d 1006).

**7.** As appellants point out by their briefs, of the 48 jurisdictions which currently require that group policies contain a conversion clause, 47 further provide that insurance coverage exists during a 31-day period statutorily required for conversion (Connecticut dictates coverage by administrative guideline). (Ala Code, § 27-18-13; Alaska Stats, § 21.48.200; Ariz Rev Stats Ann, § 20-1268; Ark Stats Ann, § 66-3519; Cal Insurance Code, § 10209, subd [d]; Col Rev Stats, § 10-7-202, subd [1], par [j]; Conn Ins Dept Bulletin S-4, subd [10] [Dec. 10, 1968]; Del Code Ann, tit 18, § 3121; DC Code Ann, § 35-515, subd [J]; 1982 Fla Sess Laws, ch 82-243, § 439, amdg Fla Stats Ann, § 627-568; Ga Code Ann, § 56-2704, subd [a], par [10]; Hawaii Rev Stats, § 431-592; Idaho Code, § 41-2020; Ill Ann Stats, ch 73, par 843.1, subd [H]; Ind Stats Ann, § 27-1-12-28, subd [10]; Iowa Code, § 509.2, subd 10; Kan Stats Ann, § 40-434, subd [10]; Ky Rev Stats, § 304.16-210; La Rev Stats Ann, § 22:176, subd [12]; Me Rev Stats Ann, tit 24-A, § 2623; Md Ann Code, art 48A, § 436; Mass Gen Laws Ann, ch 175, § 110D; Minn Stats Ann, § 61A.09, subd 1, par [g]; Mont Code Ann, § 33-20-1211; Neb Rev Stats, § 44-1607, subd [10]; Nev Rev Stats, ch 688B.140; NH Rev Stats Ann, § 408:16, subd [10]; NJ Stats Ann, § 17B:27-21; NM Stats Ann, § 59-16-40; NY Insurance Law, § 161; NC Gen Stats, § 58-211, subd [10]; Ohio Rev Code Ann, tit 39, § 3917.06, subd [G]; Okla Stats Ann, tit 36, § 4103, subd 10; Ore Rev Stats, § 743.339; Pa Stats Ann, tit 40, § 532.6, subd [10]; PR Laws Ann, tit 26, § 1410, subd [3]; SC Code Ann, § 38-31-10, subd [10]; SD Codified Laws Ann, § 58-16-41; Tenn Code Ann, § 56-7-601, subd [a]; Texas Ins Code Ann, art 3.50, § 2, subd [10]; Utah Code Ann, tit 31, § 31-23-17; Vt Stats Ann, tit 8, § 3822; Va Code, § 38.1-428.3; Wash Rev Code Ann, § 48.24.200; W Va Code, § 33-14-18; Wis Stats Ann, § 632.57, subd [5]; Wyo Stats Ann, tit 26, § 26-17-120.) Of the afore-mentioned group, 19 are similar to the Federal employees' group life insurance in that they provide for conversion upon termination and coverage during the conversion period, but no notice. Michigan provides no coverage during the 31-day conversion period (see Mich Comp Laws, § 500.4438).

In the remaining 28 jurisdictions, two types of notice statutes exist. These statutes were enacted to insure that employees are aware of their termination from employment, and of their conversion rights.

In 25 of these jurisdictions, failure to notify an employee of his rights may extend the time allotted for conversion; however, such failure will not exceed coverage beyond the 31-day period. In three jurisdictions (New York, Massachusetts and New Hampshire) coverage may extend beyond the 31-day period if an employee is not given timely notification of his conversion rights (Ala Code, § 27-18-14; Alaska Stats, § 21.48.210; Ariz Rev Stats Ann, § 20-1269; Ark Stats Ann, § 66-3522; Cal Insurance Code, § 10209, subd [d]; Del Code Ann, tit 18, § 3123; DC Code Ann, § 35-516; Ga Code Ann, § 56-2705; Hawaii Rev Stats, § 431-593; Idaho Code, § 41-2021; Kan Stats Ann, § 40-435; Me Rev Stats Ann, tit 24-A, § 2625; Mass Gen Laws Ann, ch 175, § 134A; NJ Stats Ann, § 17B:27-24; NM Stats Ann, § 59-16-42; NY Insurance Law, § 204, subd 3; Okla Stats Ann, tit 36, § 4104; Pa Stats Ann, tit 40, § 532.7; PR Laws Ann, tit 26, § 1410, subd [4]; Tenn Code Ann, § 56-7-601, subd [c] [1980]; Utah Code Ann, tit 31, § 31-23-21; Vt Stats Ann, tit 8, § 3823; W Va Code, § 33-14-20; Wyo Stats Ann, tit 26, § 26-17-122). (For further discussion, see, generally, Ann., 68 ALR2d 8.)

The Supreme Court has delineated the two ways by which the pre-emption doctrine may be found applicable:

"The pre-emption doctrine, which has its roots in the Supremacy Clause, U.S. Const., Art. VI, cl. 2, requires us to examine congressional intent. Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' *Jones* v. *Rath Packing Co.,* 430 U.S. 519, 525 (1977). Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because '[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose.' *Rice* v. *Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947).

"Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility.' *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U.S. 132, 142-143 (1963), or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' *Hines* v. *Davidowitz,* 312 U.S. 53, 67 (1941). See also *Jones* v. *Rath Packing Co.,* 430 U.S., at 526; *Bethlehem Steel Co.* v. *New York Labor Relations Bd.,* 330 U.S. 767, 773 (1947) * * * 'The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail.' *Free* v. *Bland,* 369 U.S. 663, 666 (1962); see also *Ridgway* v. *Ridgway,* 454 U.S. 46, 54-55 (1981)." (*Fidelity Fed. Sav. & Loan Assn. v de la Cuesta,* 458 US 141, 152-153, *supra.*)

It is the latter category of pre-emption which applies at bar.

Where the Government purchases insurance for its employees, Federal law can pre-empt and displace inconsistent State law. In *Ridgway v Ridgway* (454 US 46, *supra*), the court held that controlling provisions of the Servicemen's Group Life Insurance Act (see, generally, US Code, tit 38, § 765 *et seq.*) (SGLIA) under which an insured member possesses the right to freely designate his beneficiary and alter that choice, prevail over inconsistent State law. Some aspects of the insured's rights and the insurer's obligations were thus held to be governed exclusively by Federal law. One of the petitioners in *Ridgway* (*supra*), Prudential Insurance Company of America, served as the primary insurer under the SGLIA, as defendant Metropolitan Life Insurance Company serves as the primary insurer under the Federal Employees' Group Life Insurance Act. There is no indication in *Ridgway* (*supra*) that aspects of rights and obligations under the Act would not also be governed by Federal law under certain circumstances.

In *Fidelity Fed. Sav. & Loan Assn. v de la Cuesta* (458 US 141, *supra*), the Supreme Court found that California law, which imposed additional requirements on a lender prior to the lender being able to exercise a due-on-sale clause, was pre-empted by a regulation of the Federal Home Loan Bank Board (empowered by the Home Owners' Loan Act to provide for the organization, operation and regulation of Federal savings and loan associations) which did not impose such additional requirements. The court reached this result even though the Home Owners' Loan Act did permit some aspects of State mortgage law to apply. It reasoned, *inter alia,* that the Federal system of regulation was complete with respect to this issue. The Federal Home Loan Bank Board's regulations (the preamble to which had stated an intent to have due-on-sale clauses governed exclusively by Federal law) to the effect that a savings and loan association continued to have the power to include due-on-sale clauses and enforce such provisions constituted a substantive rule in direct conflict with California law, which limited a Federal association's right to exercise a due-on-sale provision to cases in which the lender could

demonstrate that the transfer had impaired his security (*Fidelity Fed. Sav. & Loan Assn. v de la Cuesta,* 458 US 141, 154-155, *supra*). For some purposes, State law is applicable to Federal employees' group life insurance. For example, State domestic relations law applies to determine who is a deceased employee's lawful widow or widower because there is no Federal law with respect to marital status, which is primarily a State concern (see *Metropolitan Life Ins. Co. v Manning,* 568 F2d 922). Here, however, the Federal statute and regulations are only susceptible to the interpretation that insurance coverage under the Act stops 31 days following termination, regardless of State law to the contrary, and further, that there is no notice requirement.

In the case under consideration, neither the policy, statute nor regulations require that the Government or insurer notify a separated employee of his conversion rights. Assuming, *arguendo,* that the additional requirement of a 15-day extension afforded by the notice was binding upon Metropolitan Life Insurance Company with respect to conversion, such requirement cannot be extended by implication to mandate a coterminous extension of coverage. Special Term's reading of such coterminous extension into the statutory scheme must fail in that there is no evidence of Congressional or administrative intent, either express or implied, that the Government or insurer be required to notify an insured of his conversion right upon separation, and even assuming such intent could be read into form 2821, such intent cannot be used to read an additional extension of *coverage* into the 15-day conversion extension afforded by the notice (see US Code, tit 5, § 8709, subd [d], par [1]). The system for termination of insurance coverage, as set forth in section 8706 (subd [a]) of title 5 of the United States Code, 5 CFR 870.501 and sections 3 and 6 of the policy is holistic. The omission of a notice of conversion upon termination requirement constitutes a conscious legislative and regulatory choice, and inasmuch as it conflicts with the law of this State, it pre-empts such legislation (see *Fidelity Fed. Sav. & Loan Assn. v de la Cuesta,* 458 US 141, 153-154, *supra;* US Code, tit 5, § 8709, subd [d], par [1]). We therefore conclude that, by the terms of the applicable

Federal statutes and regulations, Michael Reinisch's Federal employees' group life insurance coverage terminated prior to his untimely death.

Finally, we note that the application of State law would not occasion a different result, the appropriate forum being the District of Columbia.

Subdivision 3 of section 204 of the Insurance Law provides that where a certificate holder under a group life insurance policy issued to an employer (see Insurance Law, § 204, subd 1, par [a]) is afforded a conversion privilege by such document, the holder shall be notified of such privilege and its duration within 15 days after the happening of the event which triggers the privilege. Absent such notification, the statute provides that the time allowed for the exercise of the conversion privilege shall be extended to a maximum of 90 days after the termination of coverage (Insurance Law, § 204, subd 3; see, also, *De Ville v Continental Assur. Co.,* 10 AD2d 386, affd 8 NY2d 1080), and under such circumstances, the statute has been construed as affording a continuance of coverage for the 90-day period after termination (*Payne v Equitable Life Assur. Soc.,* 14 AD2d 266, affd 11 NY2d 1006; see *De Ville v Continental Assur. Co., supra*). However, subdivision 3 of section 204 of the Insurance Law applies only to policies of group life insurance "issued to a group described [above] *for delivery in this state*" (Insurance Law, § 204, subd 3; emphasis added).

Accordingly, as the contract in question and subsequent amendments thereto were executed, issued and delivered in the District of Columbia, New York law can have no application to the case under review (cf. *Kahn v Great-West Life Assur. Co.,* 61 Misc 2d 918, 922). Rather, sections 35-515 and 35-516 of the District of Columbia Code Annotated, which govern policies of group life insurance delivered within the District of Columbia, would apply. Subdivision (H) of section 35-515 governs conversion provisions. It requires that group life insurance policies delivered in the District of Columbia contain: "(H) A provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment or of membership in the class or classes eligible for

coverage under the policy, such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance without disability or other supplementary benefits, provided application for the individual policy shall be made, and the 1st premium paid to the insurer, within 31 days after such termination". Another provision with respect to coverage provides: "that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with subparagraph (H) or (I) of this section and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the 1st premium therefor has been made" (DC Code Ann, § 35-515, subd [J]).

With respect to the notice requirements relating to conversion privileges under a group life policy, subdivision (a) of section 35-516 of the District of Columbia Code Annotated provides: "If any individual insured under a group life insurance policy hereafter delivered in the District becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to making of application and payment of the 1st premium within the period specified in such policy, and if such individual is not given notice of the existence of such right at least 15 days prior to the expiration date of such period, then, in such event, the individual shall have an additional period within which to exercise such right, *but nothing herein contained shall be construed to continue any insurance beyond the period provided in such policy*. This additional period shall expire 15 days next after the individual is given such notice but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy. Written notice presented to the individual or mailed by the policyholder to the last known address of the individual or mailed by the insurer to the last known address of the individual as furnished by the policyholder

shall constitute notice for the purpose of this subsection" (emphasis added).

Thus, in the event that this court were to find Federal pre-emption inapplicable, the result would not be changed. Under the controlling provisions of the District of Columbia Code Annotated, Mr. Reinisch would have been allowed 31 days after termination within which to obtain an individual policy of life insurance, during which time he would have remained insured. The failure to notify him of his conversion right would not have afforded him an expanded period of coverage. Such omission would merely have provided a further period during which Mr. Reinisch could have exercised his option to convert. As jurisdictions with similar statutes have held, the lack of timely notice of a conversion privilege does not extend coverage beyond the 31-day grace period after termination of employment and thus, upon the insured's demise after the conclusion of the 31-day period, there can be no recovery (see, e.g., *Preaseau v Prudential Ins. Co.*, 591 F2d 74; *Frank v Sentry Life Ins. Co.*, 526 P2d 1146 [Okla]; see, generally, Ann., 68 ALR2d 8, 125, §§ 75, 76[a]).

Accordingly, the judgment of Special Term should be reversed insofar as appealed from, and defendants' cross motion for summary judgment dismissing plaintiff's complaint should be granted in its entirety.

GIBBONS, J. P., O'CONNOR and BROWN, JJ., concur.

Judgment of the Supreme Court, Queens County, dated June 10, 1982, reversed insofar as appealed from, on the law, without costs or disbursements, plaintiff's motion for partial summary judgment on the first cause of action denied, and defendants' cross motion for summary judgment dismissing the complaint is granted in its entirety.